Flannery, J.
The plaintiff, Joseph F. Irvin (Irvin), seeks declaratory and monetary relief, claiming the defendant, Thomas W. McGee (McGee), unlawfully terminated his employment with the House of Representatives. Specifically, Irvin alleges that McGee’s actions violated his due process rights under the Massachusetts Declaration of Rights, Part I, article 12 (Count I); breached an implied covenant of good faith and fair dealing required in employment at-will contracts (Count II); prevented Irvin from continuing his employment in violation of G.L.c. 149, §19 (Count III); unlawfully interfered with Irvin’s employment (Count IV); and deprived Irvin of his civil rights under G.L.c. 12, §§11H and 111 by intimidating, threatening, and coercing Irvin in the exercise of his rights under the Massachusetts Declaration of Rights (Count V).
Defendant McGee now moves for summary judgment pursuant to Mass.R.Civ.P. 56 on all counts. Plaintiff concedes to summary judgment as to counts III and IV. For the following reasons, summary judgment is allowed as to all counts.
BACKGROUND
The undisputed facts are as follows. The Joint Committee on Rules hired Irvin in March 1964 as an administrative assistant preparing the Legislative Bulletin. Def. Ex. 2 p.3; Def. Ex. 9 No. 5(b); PI. Aff. 4. In 1972, Irvin was transferred to the Office of Legislative Data Processing. Def. Ex. 9 No. 5(b). In April of 1977, a new director assumed control of the Legislative Data Processing Office and did not wish to continue Irvin’s services. Def. Ex. 6 p. 19. Dr. Anthony J. Burke, Director of the Legislative Service Bureau, offered Irvin the opportunity to work for him. Id. at 19-20. Irvin accepted, and Burke became Irvin’s immediate supervisor with the Speaker of the House retaining ultimate authority over Irvin’s employment. Id. at 37, 10, 31; Def. Ex. 4 No. 7; PI. Aff. 6. As media assistant for the Legislative Service Bureau, Irvin’s duties included making multimedia presentations for members of the Legislature and visitors to the State House. Def. Ex. 6, pp. 21, 50-51; Def. Ex. 9 No. 5(a); Def. Ex. 5 No. 7. This work required lifting and moving heavy audio-visual equipment. PI. Aff. 12.
In March of 1982, Irvin sustained a personal injury while lifting some electronic equipment at work. PI. Aff. 13. Irvin’s doctor recommended that Irvin be transferred to “light duty” to prevent exacerbating his injury. PL Aff. 17. Subsequently, Irvin was relieved of his presentation responsibilities and assigned to provide clerical assistance to the Legislative Service Bureau photographer. Def. Ex. 6 pp. 39-43; 47-48; 50-55; Def. Ex. 9 No. 5(a); Def. Ex. 5, No. 7; PI. Aff. p. 7.[1]
Irvin’s reassignment required him to work in the photographer’s office. PL Aff. 23; Def. Ex. 6 p. 53. The chemicals in the photographer’s office made Irvin ill *202 and he communicated this to his immediate supervisor, Dr. Burke. PI. Aff. 23-24; Def. Ex. 6 p. 54-57, An air quality control study confirmed the substandard working conditions. PL Aff. 25; PI. Ex. H.
Irvin had initially refused to accept his new assignment in the photographer’s office and voiced his dissatisfaction over his new position to Dr. Burke and to the defendant’s administrative assistant. Burke Dep. 43-44, 65; Def. Ex. 16. The defendant responded by letter date April 14, 1982, suggesting that Irvin discuss his problems with Dr. Burke. The letter concluded, “[i]n this bad economic climate, we should all be most happy to have a position." PI. Ex. 4.
On June 22, 1982, Irvin, Dr. Burke, and the defendant met to discuss internal office problems. Dr. Burke indicated that he could no longer serve as Irvin’s supervisor because Irvin had become “totally unmanageable.” Burke Dep. 45. At that time, Irvin told the defendant that Dr. Burke was assigning him functions outside his job description. PI. Aff. 29.
In September of 1982, Irvin submitted an application for accidental disability retirement, and informed Dr. Burke to that effect. Burke Dep. 61-62; PI. Aff. 39-40.
In October, Irvin received notice that his employment was terminated, but no reason was disclosed. PL Ex. Q; Pl. Aff. 35, 41; Burke Dep. 62-63.[2] In a letter dated November 1, 1982, McGee informed Irvin that there was “no longer need" for his position. Def. Ex. 30. Another document, however, indicated that Irvin’s discharge resulted from “his constant complaints about every position offered to him.” PL Ex. U. Although Irvin asserts that his position was subsequently filled by another political appointment, PI. Aff. 42, Dr. Burke testified that Irvin’s position has never been filled, but rather he or his staff members assumed Irvin’s duties. Burke Dep. 72-73.
Irvin file suit in October 1985 and a pretrial conference was held in October 1990. Pursuant to stipulations by both parties, the State Retirement Board held a hearing on January 23, 1992 to determine whether Irvin’s discharge was justified. The Board found in favor of the defendant and Irvin sought judicial review in the Boston Municipal Court. See Irvin v. House of Representatives, SRB-92-IRV (Feb. 1992); Irvin v. State Bd. of Retirement and Mass. House of Representatives, BMC No. 183644 (no action taken by plaintiff other than filing an action); Def. Ex. 16. Irvin then filed a Motion for Relief from Agreement and Stipulation of Dismissal which this court allowed on July 22, 1992, reviving the instant action.[3]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material facts and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat‘l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Immunity Under Article Twenty-one
The defendant initially raises article twenty-one of the Massachusetts Declaration of Rights, claiming that the “freedom of deliberation” provision bars the plaintiffs suit in its entirety. Article twenty-one provides, ”[t]he freedom of deliberation, speech and debate, in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action or complaint, in any other court or place whatsoever.” Mass. Const., Dec. of Rights, art. 21.
In Coffin v. Coffin, 4 Mass. 1 (1808), the Massachusetts Supreme Judicial Court interpreted article twenty-one as a privilege protecting the rights of the people by enabling members of the Legislature to “execute the functions of their office, without fear of prosecutions, civil or criminal.” Id. at 27. In determining a legislator’s immunity under article twenty-one, the court delineated the proper inquiry as whether the defendant was “acting as a representative” in the course of “executing the duties of his office.” Id. at 29-30; see Lane v. Bump, Civ. No. 92-5940-F (Middlesex Super. Ct. June 14, 1993). The court accorded article twenty-one a liberal construction, extending the privilege to “the giving of a vote, to the making of a written report, and to eveiy other act resulting from the nature, and in the execution, of the office.” Coffin v. Coffin, 4 Mass. 1, 27 (1808). Despite the latitude the court purported to grant article twenty-one, it held that a defamatoiy statement made in the Legislature between legislators, which did not concern a matter then currently under debate, did not fall within the purview of the privilege. Id. at 36.
The defendant asserts that under Coffin, supra, speech and debate protection is not confined to action *203 directly leading to the passage of legislation. The defendant argues that discharging personnel who assist legislators in performing their duties falls within the privilege’s ambit.
The defendant misconstrues the extent of the privilege delineated in Coffin, supra. “In context, it is clear that the Court had in mind only official duties in a rather specific sense.” Lane v. Bump, Civ. No. 92-5940-F (Middlesex Super. Ct., June 14, 1993).[4] While legislative investigations and committee reports may not ultimately lead to the passage of legislation, such actions fall under the protection of article twenty-one. Coffin v. Coffin, 4 Mass. at 27 (noting that the privilege under the speech and debate clause includes “the making of a written report”); see Tenney v. Brandhove, 341 U.S. 367, 377-78 (1951) (committee investigations fall within the bounds of legislative duties unless they obviously usurp functions within the exclusive province of the judicial or executive branch). This is precisely the type of conduct that the Coffin court intended to immunize when it stated that the speech and debate provision “ought not to be construed strictly, but liberally.” Coffin v. Coffin, 4 Mass. 1, 27 (1808).
Personnel decisions, however, have been characterized as anything but legislative. See Forrester v. White, 484 U.S. 219, 229 (1988) (characterizing a judge’s discharge of a probation officer as administrative); Bailen v. Bd. of Assessors of Chelsea, 241 Mass. 411, 416 (1922) (noting power to appoint and remove civil service officers is an executive power); Stiles v. Municipal Council of Lowell, 233 Mass. 174, 181-82 (1919) (power to remove municipal officer may be executive, administrative or judicial). Since the speech and debate privilege exempts legislators from liability only when they are “acting as a representative,” employment decisions necessarily fall outside its scope. Coffin v. Coffin, 4 Mass. 1, 29-30; cf. Forrester v. White, 484 U.S. 219, 229 (1988).
There are some instances, however, where legislative employment decisions may be entitled to immunity. Federal courts have extended legislator’s immunity under the federal speech or debate clause to employment decisions concerning employees that have an “opportunity for ‘meaningful input’ into the legislative process.” Compare Agromayor v. Colberg, 738 F.2d 55, 60 (1st Cir. 1984) (holding employment decision regarding legislative press officer entitled to immunity) with Walker v. Jones, 733 F.2d 923, 930-31 (D.C. Cir. 1984) (dismissal of food service employee not protected under federal speech or debate clause) and Davis v. Passman, 544 F.2d 865, 878 (5th Cir. 1977) (firing of legislative aide not entitled to immunity because aide’s responsibilities not related to development and enactment of legislation), rev’d en banc on other grids., 571 F.2d 793 rev’d, 442 U.S. 228.[5]
In the instant case, the defendant’s decision to discharge Irvin is not entitled to immunity under article twenty-one’s speech and debate privilege. Irvin was neither a personal aide to McGee, nor involved in policymaking. Rather, Irvin’s duties answering phones for the Legislative Service Bureau’s photographer, providing media services, and moving audio-visual equipment were more akin to clerical tasks. See PI. Aff. No. 12. The court in Coffin, supra would undoubtedly hold McGee’s employment decision too remote to be shielded by the speech and debate privilege. “(W]hen a representative pleads his privilege, to entitle himself to it, it must appear that some language or conduct of his, in the character of a representative, is the foundation of the prosecution, for in no other character can he claim the privilege.” Coffin v. Coffin, 4 Mass. 1, 31 (1808). Since Irvin performed no policymaking function, the defendant’s action of discharging him cannot be construed as performed “in the character of a representative.” Id. at 34.[6]
Due Process
In terminating Irvin’s employment, Irvin alleges that McGee violated his due process rights as guaranteed in the Massachusetts Declaration of Rights. Mass. Dec. of Rts., Pt. 1, art. XII.[7] Since Irvin can point to no recognized property interest in his continued employment, summary judgment is appropriate as to Count I.
To implicate the due process clause, Irvin must have a property or liberty interest in his continued employment. Smith v. Comm’r of Mental Retardation, 409 Mass. 545, 548-49 (1991) (holding a provisional state employee had no protectable property interest in her position); see Board of Regents v. Roth, 408 U.S. 564, 569 (1972) (due process requirements apply only when recognized property or liberty interests are involved). ‘To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Board of Regents v. Roth 408 U.S. at 577. Property interests “are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” Id.; see Rooney v. Town of Yarmouth 485, 495 n.6 (1991) (noting property interests have same protection under Massachusetts law as under the federal constitution).
As an at-will employee, Irvin could be fired “for almost any reason or no reason at all.” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992). He therefore does not have “a legitimate claim of entitlement” in his continued employment. Board of Regents v. Roth, 408 U.S. at 577. Moreover, the procedural safeguards of G.L.c. 32, §16(2) do not create any substantive property interest. See Smith v. Comm’r of Mental Retardation, 409 Mass. at 549 (“statute that ‘merely condition(s) an employee’s removal on *204 compliance with certain specified procedures,’ does not establish a constitutionally protected property, interest in the position” (citations omitted)); cf. Ruggieri v. City of Somerville, 10 Mass.App.Ct. 43, 45 (1980) (public employees without tenure or civil service status “do not have a right to notice or a hearing before discharge”).[8] See G.L.c. 32, §16(2) (providing unjust discharge hearing before Retirement Board); G.L.c. 32, §16(3) (providing judicial review of Board’s decision); see generally Campana v. Bd. of Directors of Mass. Housing Fin. Agency, 399 Mass. 492 (1987) (discussing G.L.c. 32, §16); Bagley v. Contributory Retirement Appeal Bd., 397 Mass. 255 (1986) (discussing rights under G.L.c. 32, §16).
Implied Covenant of Good Faith
While an at-will employee may be discharged for virtually any reason, Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992) (noting that employees at-will may be discharged “for almost any reason or no reason at all”), a covenant of good faith and fair dealing implicitly exists in all contracts. Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386, 389, rev. denied, 400 Mass. 1106 (1987). An implied covenant of good faith protects at-will employees from being discharged in order to deprive them of benefits derived from past services. Fortune v. Nat’l Cash Register Co., 373 Mass. 96, 102 (1977) (holding employer liable for discharging employee to prevent employee from obtaining his commissions); Siles v. Travenol Laboratories, Inc., 13 Mass.App.Ct. 354,358 (bad faith termination of at-will employee requires a showing that defendant intended to benefit financially at employee’s expense), appeal denied, 386 Mass. 1103 (1982). Another exception to the at-will employment rule prevents discharges for reasons violative of public policy. See Cort v. Bristol-Myers Co., 385 Mass. 300, 303 (1982) (discussing public policy exception to at-will employment rule); Mullen v. Ludlow Hosp. Soc’y., 32 Mass.App.Ct. 968, 969 (rescript op.) (discussing public policy exception) rev. denied, 413 Mass. 1103 (1992); Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386, 389 (noting public policy exception is based on implied covenant of good faith), rev. denied, 400 Mass. 1106 (1987).
In his complaint, Irvin alleges McGee breached an implied covenant of good faith by terminating his employment. (Count II). Irvin asserts, inter alia, that he received less pension than he would have received if McGee had not terminated his employment, that McGee secured a windfall profit for the Commonwealth by firing him, and that McGee’s actions were motivated by the desire for financial gain at Irvin’s expense. Compl. 18-19. Since allegations that an employee’s discharge deprived him of increased pension benefits does not demonstrate a Fortune-type forfeiture, Irvin’s complaint is defective as a matter of law. See Mullen, 32 Mass.App.Ct. at 969 n.4 (deprivation of increase in pension benefits due to discharge not a forfeiture under Fortune (citations omitted)).[9]
Although Irvin states in his affidavit that he was terminated in retaliation for exercising his rights to file for accidental disability retirement and to work in a safe environment, he fails to allege a violation of public policy that warrants relief.
Determining whether a retaliatory discharge violates public policy is a question of law. Wright v. Shriner’s Hosp. for Crippled Children, 412 Mass. at 472; Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 561 n.7 (1988). The public policy exception to the employment at-will rule is limited. Glaz v. Ralston Purina Co., 24 Mass.App.Ct. at 389-90. “An employee must be able to point to some clearly-defined and well-established public policy that is threatened by the employer’s action.” Id.; see Mello v. Stop & Shop Cos., Inc., 402 Mass. at 556 (noting that particular public policies must be violated (emphasis added)).
Massachusetts courts recognize a cause of action when an at-will employee has been discharged to prevent him from asserting a legally guaranteed right. Wright v. Shriner’s Hosp. for Crippled Children, 412 Mass. at 472 (redress available for employee at-will terminated for filing workers’ compensation claim); Ourfalian v. Aro Mfg. Co., Inc., 31 Mass.App.Ct. 294, 297-98 (1991) (action stated for retaliatory discharge for filing workers’ compensation claim).[10] Cooperation with an ongoing governmental investigation is similarly protected. Flesner v. Technical Comm. Corp., 410 Mass. at 810-11 (1991). The public policy exception also prevents employers from discharging at-will employees for doing what the law requires or refusing to do what the law prohibits. See Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416 (1988) (plaintiff stated claim for wrongful discharge where termination resulted from enforcement of safety laws which were her responsibility to enforce); DeRose v. Putnam Management Co., 398 Mass. 205, 210 (1986) (employer liable for discharging at-will employee when employee refused to commit perjury). Irvin’s claim is not within any of those categories.
Moreover, in his supporting affidavit, Irvin asserts his belief that his application for retirement benefits was one of the reasons for his discharge because he informed Dr. Burke of his application. “Expressions of belief, of course, do not rise to the personal knowledge required by Mass.R.Civ.P. 56(e), and a judge does not have to accept an assertion of belief as an assertion of the truth of the fact believed.” Sereni v. Star Sportswear Mfg. Co., 24 Mass.App.Ct. 428, 433 (internal citations omitted), rev. denied, 400 Mass. 1107 (1987).
Additionally, Irvin claims that his termination resulted from his complaints about workplace conditions. He urges this court to extend the public policy exception to the at-will employment rule to prohibit such retaliatory actions. I decline to do so.
*205 In Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469 (1992), the Supreme Judicial Court refused to extend the public policy exception to a nurse’s critical remarks to a survey team regarding the quality of patient care. Noting that good medical care by hospitals was in the public interest, the court stated, “[i]t does not follow, however, that all health care employees should be immune from the general at-will employment rule simply because they claim to be reporting on issues that they feel are detrimental to health care.” Id. at 474-75.
A similar but less impressive situation exists here. While conditions in the workplace are an important concern, to hold all at-will employees immune from the at-will employment rule for voicing their complaints would nullify the rule.
Finally, Irvin contends that his claim for retaliation is even “more viable since the defendant gave Mr. Irvin one reason for his termination (no work) and told the D.E.T. a completely different reason.” Since an employer may give an at-will employee even a false reason for discharge without liability attaching, this argument has no merit. See Cort v. Bristol-Myer Co., 385 Mass. 300, 305-06 (1982) (declining to impose liability on employer for giving false reasons for discharging at-will employee).
Free Speech
Although not mentioned in his complaint, Irvin argues in his brief that McGee violated his right to free speech under Article XVI of the Massachusetts Declaration of Rights. Mass. Dec. of Rts. Pt. I, art. XVI. (“right of free speech shall not be abridged”). Defendant urges this court not to address this “new” claim. Plaintiff, however, argues that under MRCP Rule 15 leave to amend is generally permitted, and notes that he will amend the complaint if necessary.
Leave to amend is usually granted unless good reasons exist for denying it. Mathis v. Mass. Elec. Co., 409 Mass. 256, 264 (1991) (discussing reasons for denying motion to amend); Barbosa v. Hopper Feeds, Inc., 404 Mass. 610, 621-22 (1989) (discussing denial of motion to amend). Futility of the amendment is one such reason. Mathis v. Mass. Elec. Co., 409 Mass. at 264.1 conclude that Irvin’s claim under article sixteen of the Massachusetts Declaration of Rights must be dismissed as a matter of law.
Massachusetts Declaration of Rights, Pt. 1, art. XVI provides that “[t]he right of free speech shall not be abridged.” Mass. Dec. of Rts., Pt. 1, art. XVI.[11] That a state may not terminate an employee “on a basis that infringes that employee’s constitutionally protected speech” is firmly established. Rankin v. McPherson, 483 U.S. 378, 383 (1987) (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)). An employee’s status is immaterial. Id. (probationary employee entitled to protection despite fact that she could be terminated for any reason or no reason whatsoever).
To establish that McGee’s actions violated Irvin’s free speech rights, Irvin must demonstrate that his speech deserves constitutional protection, and that his speech was a “substantial” or “motivating factor” in his discharge. E.g. Harris v. Bd. of Trustees of State Colleges, 405 Mass. 515, 523 (1989) (upholding dismissal of tenured faculty member because he failed to show that his public statements were a motivating or substantial factor in his dismissal); Caron v. Silvia, 32 Mass.App.Ct. 271, 274 (1992) (speech must address public issue to be protected); MacDonough v. Bd. of Directors of Mass. Housing Fin. Agency, 28 Mass.App.Ct. 538, 544 (1990) (discussing standard for establishing dismissal in violation of freedom of speech); see generally Rankin v. McPherson, 483 U.S. 378, 383-85 (1987) (analyzing discharge of state employee for exercising right of free speech). Speech must address a matter of public concern rather than one’s personal interests or internal office grievances to receive constitutional protection.[12] Smith v. Comm’r of Mental Retardation, 409 Mass. 545, 552 (1991) (finding speech unprotected); Caron v. Silvia 32 Mass.App.Ct. 271, 274 (1992) (characterizing protected speech as that involving public issues). Whether speech receives constitutional protection is a judicial determination, which depends on the “content, form, and context” of the speech. Caron v. Silvia 32 Mass.App.Ct. at 274 (citing Connick v. Myers, 461 U.S. 138, 146-47 (1983)).
Irvin’s statements concerning the conditions of his working environment did not address a matter of public concern; they reflected his personal interests and internal office grievances. Moreover, Irvin made his statements at work during a meeting. Compare Caron v. Silvia 32 Mass.App.Ct. at 275-76 (finding speech made on television concerning the rights of smokers in the workplace and particular office nonsmoking policy protected) with Smith v. Comm’r of Mental Retardation, 409 Mass. 545, 552 (1991) (rejecting argument that statements concerning disclosure of plaintiffs personnel file is a matter of public concern). Consequently, McGee’s termination of Irvin did not abridge Irvin’s free speech rights under article sixteen of the Massachusetts Declaration of Rights.
Additionally, Irvin alleges that he was terminated for political reasons because he was replaced by a political appointee. Patronage hiring impermissibly burdens free speech unless there exists a vital governmental interest in doing so. Rutan v. Republican Party of Ill., 497 U.S. 62, 77-78 (1990) (holding hiring decisions based on political belief and association unconstitutional). Irvin, however, fails to provide any affirmative evidence that he was replaced; nor does he indicate that he has personal knowledge of such action as required by M.R.C.P. 56(e). Since McGee provided affirmative evidence that Irvin’s position was abolished, Irvin’s mere assertions to the contrary do not defeat defendant’s motion for summary judgment. See *206 Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Civil Rights
Finally, plaintiff alleges that the defendant’s conduct deprived the plaintiff of his civil rights under the Massachusetts Civil Rights Act (MCRA). G.L.c. 12, §§llHand 111 (1986 ed.).[13] The MCRA does not create any independent rights; rather it provides redress for persons whose rights have been interfered with by threats, intimidation, or coercion. Flesner v. Technical Communications Corp., 410 Mass. 805, 818 (1991) (failure to identify secured right under Constitution or laws of the United States or Commonwealth fatal to claim under MCRA); Hobson v. McLean Hosp. Corp., 402 Mass. 413, 418-19 and 419 n.6 (1988) (MCRA provides no substantive rights, and failure to identify rights secured under Massachusetts law resulted in dismissal of claim); O’Connell v. Chasdi, 400 Mass. 686, 694 (1987) (MCRAintended to provide remedy for racial harassment). As an at-will employee, Irvin has no secured constitutional right to retain his position. See Flesner v. Technical Communication Corp., 410 Mass. at 819-19 (1991) (no constitutional right to retain at-will employment). Korb v. Raytheon Corp., 410 Mass. 581, 585 (1991) (no improper interference with secured rights when employer discharges ineffective at-will employee). Although Irvin alleges that McGee interfered with his right of free speech under article sixteen, Irvin’s speech clearly is not entitled to protection. See supra (discussing Irvin’s claim under Massachusetts Declaration of Rights, art. XVI). Nor does Irvin have a legally recognized property interest entitling him to due process. See supra (discussing Irvin’s due process claim).
Moreover, to establish a violation implicating the MCRA, Irvin must have been subjected to “threats, intimidation or coercion." G.L.c. 12, §§11H and 1II. A direct violation of one’s rights does not constitute “threats, intimidation, or coercion.” Longval v. Comm'r of Correction, 404 Mass. 325, 333 (1989). Threats, intimidation, or coercion “involves either a physical confrontation accompanied by a threat of harm, or the loss of a contract right.” Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 210 (1991).[14] Irvin asserts that in response to his complaints regarding his work environment, he received a letter from McGee in which he was told “(i]n this bad economic climate, we should all be most happy to have a position.” PI. Ex. D. The defendant’s conduct clearly does not rise to the level of threats, intimidation, or coercion as contemplated by the MCRA. See Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 210 (1991) (nonrenewal of teacher’s contract did not constitute threat, intimidation, or coercion under MCRA); O’Connell v. Chasdi, 400 Mass. 686, 694 (1987) (finding sexual harassment proscribed by MCRA).[15] Since Irvin has not identified any secured rights, and was not subjected to threats, intimidation, or coercion within the meaning of the MCRA, his claim must be dismissed.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED as to all counts.
So ordered.

 Defendant contends that Irvin’s reassignment resulted from the decreased demand for media presentations and Dr. Burke’s conclusion that Irvin’s services could be more efficiently used assisting the photographer. Def. Ex. 6 pp. 50-51. Irvin, however, argues that his reassignment directly resulted from his doctor’s recommendation. PI. Aff. 18-19. The defendant denies that the reassignment resulted from the medical recommendation. Def. Ex. 6 pp. 50-51.

 Although Irvin’s discharge became effective on October 19, 1982, he was paid through November 5, 1982.

 Irvin also applied for accidental disability retirement. The State Retirement Board denied Irvin’s application and the Contributory Retirement Appeal Board (CRAB) affirmed on appeal. On February 12, 1992, this court upheld CRAB’S decision. Irvin v. CRAB, No. 90-0109-D (Suffolk Super. Ct. Feb. 12, 1991).

 In Coffin, the Court warned against construing the privilege too broadly:
In this state, we have a written constitution, formed by the people, in which they have defined, not only the powers, but the privileges of the house, either by express words, or by necessary implication. A struggle for privileges, in this state, would be a contest against the people, to wrest from them what they have not chosen to grant.
Coffin v. Coffin, 4 Mass. 1, 34 (1808).

Although article twenty-one preceded its federal counterpart, U.S. Const., art. 1, §6, cl. 1 (the speech or debate clause), Tenney v. Brandhove, 341 U.S. 367, 373 (1951) (noting the federal speech or debate provision reflected previous established state law principles), an examination of federal law illustrates that the scope of immunity granted legislators does not encompass Irvin’s discharge. The federal speech or debate clause protects legislators from lawsuits arising out of legitimate legislative business. Supreme Court of Va. v. Consumer's Union of the United States, Inc., 446 U.S. 719, 731-32 (1980) (speech or debate clause immunizes congress from suits respecting legitimate legislative activities); Eastland v. United States Servicemen’s Fund, 421 U.S. 491, 503 (1975) (speech or debate clause is an absolute bar when legislative members act within the legitimate legislative sphere); Gravel v. United States, 408 U.S. 606, 625 (1972) (speech or debate clause protects matters that are integral to “the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the . . . legislation” or other matters within the Legislature’s jurisdiction, but does not protect criminal conduct); Doe v. McMillan, 412 U.S. 306, 311 (1973) (speech or debate clause includes those things generally done in a congressional session by a member which relates to the business before it).
The Supreme Court has adopted a functional approach to immunity, examining “the nature of the functions with which a particular official or class of officials has been lawfully entrusted," and “the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.” Forrester v. White, 484 U.S. 222, 224 (1988). Consequently, immunity under the federal speech or debate clause does not extend to administrative decisions, such as the hiring and firing of personnel, not “intimately cognate” to the legislative process. See Agromayor v. Colberg, 738 F.2d 55, 59-60 (1st Cir. 1984) (holding employment decision re *207 garding legislative press officer immunized by speech or debate clause because court found “enough opportunity for ‘meaningful input’ into the legislative process”); Walker v. James, 733 F.2d 923, 930-31 (D.C. Cir. 1984) (speech or debate clause did not shield legislator’s decision to dismiss food service employee).

 Irvin’s responsibilities were not so “intimately cognate” to the legislative process as to warrant the imposition of immunity for the defendant. Walker v. James, 733 F.2d 923, 930 (D.C. Cir. 1984) (citing Davis v. Passman, 544 F.2d 865, 879 (5th Cir. 1977), rev’d on other grounds, 571 F.2d 793 (5th Cir. 1978) (en banc) rev’d, 442 U.S. 228 (1979)).

Article Twelve of the Declaration of Rights states, in pertinent part, “[a]nd no subject shall be deprived of his property, immunities, or privileges, . . . but by the judgment of his peers, or the law of the land.” Mass. Dec. of Rts., Pt. 1, art. XII.

 Because Irvin had no property interest in his continued employment, it is not necessary to address his procedural due process claim. It may be noted, however, that Irvin was provided with an administrative hearing and judicial review of his discharge pursuant to G.L.c. 32, §16.

 The defendant argues that Irvin’s claim for breach of an implied covenant of good faith must fail because Irvin has not pursued fully his administrative remedies. See Def. Ex. 37 & 38 (Contributory Retirement Appeal Board decision dismissing Irvin’s unjust discharge appeal for lack of prosecution). Even if Irvin’s failure to exhaust administrative remedies does not preclude this action, Irvin’s claim does not survive summary judgment.

 In Owfalian v. Aro Mfg. Co. Inc., 31 MassApp.Ct. 294 (1991), the plaintiff alleged that he suffered a workplace injury at the time of his discharge and that his employer had fired several other employees for filing workers’ compensation claims. The court found that the complaint and the inferences drawn therefrom stated a claim for retaliatory discharge. Id. at 296-97. In the instant case, however, Irvin fails to establish any such pattern.

 Since the protection afforded speech under the First Amendment of the federal constitution is consistent with the Massachusetts Constitution, the criteria established by the United States Supreme Court may be applied. Smith v. Comm'r of Mental Health, 409 Mass. 545, 552 (1991) (noting consistency between federal and Massachusetts law respecting freedom of speech).

 Although a public employee’s speech may not touch upon a matter of public concern, it is not entirely devoid of constitutional protection. Connick v. Myers, 461 U.S. 138, 147 (1983). “(A]bsent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of personnel decisions taken by a public agency allegedly in reaction to the employee’s behavior.” IdL

 General Laws c. 12, §111 (1986 ed.) provides:
Any person whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatoiy money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys’ fees in an amount to be fixed by the court.
Section 11H provides that the proscribed interference with secured rights occurs “[wjhenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats intimidation or coercion, with the exercise or enjoyment by any other person or persons of [secure] rights . . .” G.L.c. 12, §11H (1986 ed.).

“Threats” has been defined as “acts or language by which another is placed in fear of injury or damage.” Delany v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 409 (1989). The “creation of fear to compel conduct” constitutes intimidation. Id. Coercion is “the active domination of another’s will.” Id.

 Even though McGee’s conduct did not constitute the requisite threats, intimidation, or coercion, sovereign immunity would bar Irvin’s official capacity claim in any event. See Commonwealth v. Elm Medical Laboratories, Inc., 33 Mass.App.Ct. 71, 80 (1992) (acts described in G.L.c. 12, §11H entitled to sovereign immunity).