ANNE MARIE SMITH vs. COMMISSIONER OF MENTAL
RETARDATION & others.[1]

Hampden. October 4, 1990. - March 14, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Public Employment*, Provisional employee, Termination, Demotion. *Practice, Civil*, Summary judgment. *Administrative Law*, Hearing. *Due Process of Law*, Termination of employment.

Regulations set forth at 104 Code Mass. Regs. § 24.00 (1986) are directed to the interests and care of clients served by the Department of Mental Retardation and do not govern personnel disputes within that department. [548]

A State employee did not have a constitutionally protected property interest in her provisional position and was not entitled to a trial-type hearing to challenge her demotion. [548-551]

No Federal or State constitutional rights of free speech were implicated in a State employee's challenge to her demotion from a position that she held under a provisional appointment. [551-552]

CIVIL ACTION commenced in the Superior Court Department on November 17, 1987.

The case was heard by *Mel L. Greenberg*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Stephen R. Kaplan* for the plaintiff.

*Richard M. Brunell*, Assistant Attorney General, for the defendants.

---

[1]Donald J. Fletcher, individually and in his capacity as superintendent of the Monson Developmental Center; Steven Dykstra, in his capacity as director of individual service planning and coordination at the Monson Developmental Center, and William Teece, in his capacity as an investigator within the office of internal affairs of the Department of Mental Retardation.

O'CONNOR, J. The Department of Mental Retardation (department) employed the plaintiff as supervisor of individual service planning and coordination at the Monson Developmental Center (Monson) under a provisional appointment. The defendant Fletcher, superintendent of Monson, demoted Smith to day care services specialist as a result of an investigative report that the plaintiff had lied to William Gauthier, the president of Parents and Friends of Monson Developmental Center, Inc., a support group for Monson and its residents, and to the Commissioner of Mental Retardation. The lie was said to be a claim by the plaintiff that confidential information had been "leaked" from the plaintiff's personnel file. Fletcher's reason for demoting the plaintiff, namely, her dishonesty, was recorded in the plaintiff's personnel file.

After considerable sparring between the plaintiff, assisted to a large extent by counsel, and the administration at Monson, the plaintiff brought this action. The plaintiff's complaint, as once amended, contained prayers for preliminary and permanent injunctive relief and damages. The defendants moved for summary judgment on the complaint as once amended. The plaintiff then filed a motion for leave to file a second amended complaint. That motion was never expressly allowed or denied. However, soon after the motion for leave to file a second amended complaint was filed, a judge of the Superior Court conducted a hearing that resulted in the ruling giving rise to this appeal, and the judge's memorandum of decision makes clear that he treated the second amended complaint as having been filed by leave of court and as being operative. So do we.

The second amended complaint consists of ten printed single-spaced pages of detailed factual and legal assertions, one page containing prayers for relief, and forty-five pages of attachments. The essential facts are those we have recited above together with the further fact that, although the plaintiff appeared before an investigator and offered her version of events in answer to questions put to her, she was denied the right, a right which she asserted, to a formal trial-type hearing as a precondition to demotion. A more extensive state-

ment of facts may be found at 28 Mass. App. Ct. 628, 628-632 (1990). The relief sought in the plaintiff's second amended complaint is as follows: preliminary and permanent injunctions "forbidding the defendants . . . to take further steps to demote [the] plaintiff except upon notice and hearing, and reserving to her the right to confront and cross-examine all witnesses against her, and to summon witnesses in her defense, in proceedings held in conformity with 104 CMR 24," a judgment annulling the demotion, a declaration that all investigations are governed by 104 Code Mass. Regs. § 24.00 (1986), and that damages be assessed against the defendant Fletcher pursuant to 42 U.S.C. §§ 1983 and 1988 (1988) and G. L. c. 12, § 11I (1988 ed.).

The judge denied the plaintiff's request for preliminary injunctive relief and granted summary judgment to the defendants dismissing the complaint. The plaintiff appealed, and the Appeals Court reversed and ordered the entry of a judgment "declaring that the plaintiff shall be afforded a hearing before a hearing officer who is not in the chain of command at Monson and before whom the plaintiff may examine witnesses material to whether she made any deliberately false charges." 28 Mass. App. Ct. at 637-638. We allowed the defendants' application for further appellate review, and we now affirm the judgment entered in the Superior Court.

We note that the defendants filed no affidavits and submitted no discovery materials to support their motion for summary judgment. Nevertheless, when a complaint sets out a detailed statement of the facts on which the plaintiff relies, as the plaintiff's second amended complaint does, and those facts do not support any claim entitling the plaintiff to relief, see *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 615 (1983); *Fabrizio* v. *Quincy*, 9 Mass. App. Ct. 733, 734 (1980); 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357 (1990), it is appropriate to allow a defendant's motion for summary judgment because, in those circumstances, there can be no genuine issue of material fact. Thus, the question before the judge was, and before us is, whether, assuming the facts to be as alleged in the com-

plaint, the plaintiff is entitled to any of the relief that she seeks. We conclude that she is not so entitled.

The Superior Court judge concluded, and the Appeals Court agreed, that 104 Code Mass. Regs. § 24.00 does not apply to the plaintiff's controversy with the defendants. We need not repeat here the provisions of the regulation which are quoted and discussed at some length in the Appeals Court's opinion at 28 Mass. App. Ct. at 632-634. We agree with the Appeals Court that "the purpose of 104 Code Mass. Regs. § 24.00, Department Investigations, is directed to the interests of clients and to those of employees arising out of caretaking activity with clients. . . . The Superior Court judge correctly decided that the plaintiff was not entitled to insist that the proceedings involving her be conducted under 104 Code Mass. Regs. § 24.00." *Id.* at 633-634.

The plaintiff contended before the judge and the Appeals Court, and contends here as well, that she had property and liberty interests protected by the Fourteenth Amendment to the United States Constitution, which entitled her to procedural due process in the form of a trial-type hearing before her demotion could be effective. The judge agreed with the plaintiff's contention that she had a property interest in her position as supervisor of individual service planning and coordination, and that therefore she was entitled to predemotion notice "and an opportunity to present reasons, either in person or in writing, why the proposed action should not be taken." However, the judge concluded, presumably on the basis of the facts alleged in the second amended complaint, that the plaintiff had been given the notice and hearing to which she was entitled. The judge did not discuss the plaintiff's asserted liberty interest, perhaps because, as we shall conclude, the thrust of the second amended complaint was not to secure a name-clearing hearing for the purpose of protecting the plaintiff's general employability but instead was only to obtain such a hearing as a means of preventing her demotion to a less desirable position at Monson.

The Appeals Court decided, correctly we think, that the plaintiff did not have a constitutionally protected property in-

terest in her provisional position at Monson. *Id.* at 634. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits . . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 576-577 (1972). See *Paul* v. *Davis,* 424 U.S. 693, 710 (1976); *Perry* v. *Sindermann,* 408 U.S. 593, 599-603 (1972).

The plaintiff's only argument in support of her claim that she had a constitutionally protected property interest in her employment is that she was "a Manager (M-1), entitled as a provisional state employee with nine months' seniority to a pre-deprivation informal hearing. G. L. c. 31, § 41 [1988 ed.]. From this it follows that she had a Fourteenth Amendment property interest in the job . . . ." The argument has no merit. A State statute that "merely condition[s] an employee's removal on compliance with certain specified procedures," does not establish a constitutionally protected property interest in the position. *Bishop* v. *Wood,* 426 U.S. 341, 345 & n.8 (1976). General Laws c. 31, § 41, does not create such an interest. *Rafferty* v. *Commissioner of Pub. Welfare,* 20 Mass. App. Ct. 718, 723 (1985). Our conclusion that the plaintiff did not have a constitutionally protected property interest in her employment as supervisor of individual planning and coordination at Monson leads us to the result, reached by different reasoning by the Superior Court judge, that the plaintiff received all the notice and hearing to which she was entitled as a precondition to her demotion.

In *Regents of State Colleges* v. *Roth, supra* at 573, the Supreme Court observed that, although that case was not

such a case, "[t]here might be cases in which a State refused to reemploy a person under such circumstances that interests in liberty would be implicated. . . . The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government *is doing to him, notice and an opportunity to be heard are essential.*' . . . In such a case, due process would accord an opportunity to refute the charge before University officials." In a footnote, the Court stated: "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." *Id.* at 573 n.12. In another footnote, *id.* at 570 n.7, the Court stated, "*Before* a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing . . ." (emphasis added). "[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' . . . Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. *Roth, supra* [at 573 n.12]; *Bishop, supra.*" *Codd* v. *Velger,* 429 U.S. 624, 627-628 (1977).

In *Paul* v. *Davis, supra* at 710, the Supreme Court stated that it is not sufficient to establish a claim under either the Fourteenth Amendment or 42 U.S.C. § 1983 "that there simply be defamation by a state official; the defamation had to occur in the course of the *termination* of employment. Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement

defaming an employee who continues to be an employee." (Emphasis added.)

The Supreme Court cases leave unanswered questions about whether a nontenured State employee's liberty interest is implicated by demotion, as distinguished from termination or refusal to rehire, and whether a State employee is entitled to a name-clearing hearing before any publication of defamatory statements in his personnel file or only afterward. This court said in *Stetson v. Selectmen of Carlisle*, 369 Mass. 755, 762 (1976), that "dismissal because of immoral, illegal conduct . . . entitles the employee to notice of the reasons for his discharge and a hearing on them, if those charges have been or are likely to be disseminated either to members of the public or to prospective employers."

These questions and others, including the question as to the precise form of name-clearing hearing to which an employee might be entitled, we think, despite the Appeals Court's holding, should be left to another day because a reading of the plaintiff's second amended complaint makes abundantly clear that this action was not brought to obtain a postdemotion name-clearing hearing to protect the plaintiff's ability to obtain new employment, but was brought solely to challenge the plaintiff's demotion and ultimately to obtain reinstatement. Because the plaintiff is not entitled to a hearing under 104 Code Mass. Regs. § 24.00, and the plaintiff does not have a constitutionally protected property interest in her position, and for the further reason, which we discuss below, that the defendants' conduct did not infringe her constitutionally protected right of free speech, the plaintiff is not entitled to the relief for which this action was brought.

In *Connick v. Myers*, 461 U.S. 138, 143-144 (1983), the Supreme Court noted that, "[f]or most of this century, the unchallenged dogma was that a public employee had no right to object to conditions placed upon the terms of employment — including those which restricted the exercise of constitutional rights. The classic formulation of this position was that of Justice Holmes, who, when sitting on the Supreme Judicial Court of Massachusetts, observed: '[A policeman] may

have a constitutional right to talk politics, but he has no constitutional right to be a policeman.' *McAuliffe* v. *Mayor of New Bedford*, 155 Mass. 216, 220 (1892)." The Court also made clear, however, that that rule is not absolute, that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection," *Connick* v. *Myers*, *supra* at 145, quoting *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982), and that, with respect to an employee's expressions regarding public issues, the Court's task is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 142, quoting *Pickering* v. *Board of Educ.*, 391 U.S. 563, 568 (1968). We reject the plaintiff's argument that her statements about the disclosure of the contents of her personnel file could be viewed as a citizen's comments on matters of public concern within the rule discussed in *Connick* v. *Myers*, *supra*, rather than as unprotected statements of an employee upon matters of only personal interest. Taking the facts set forth in the plaintiff's second amended complaint as having been established, the plaintiff's demotion because of her claims concerning her personnel file did not violate her Federal or State constitutional rights of free speech. See *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550, 558 (1979) ("the criteria which have been established by the United States Supreme Court for judging claims arising under the First Amendment . . . are equally appropriate to claims brought under cognate provisions of the Massachusetts Constitution").

We conclude that the defendants' motion for summary judgment was properly allowed.

*Judgment affirmed.*