**400**

John R. LANE, Plaintiff,

v.

Argeo Paul CELUCCI, Lieutenant
Governor of Massachusetts,
Defendant.

Civ. A. No. 91–12704–MA.

United States District Court,
D. Massachusetts.

March 11, 1992.

Matthew Cobb, Law Office of Esther
C.S. Dezube, Boston, Mass., for plaintiff.

Jon Laramore, Atty. General's Office,
Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

Plaintiff John R. Lane ("Lane") filed this suit against Argeo Paul Cellucci ("Cellucci") under 42 U.S.C. § 1983, alleging violations of: 1) liberty and property interests under the Due Process Clause of the Fourteenth Amendment; and 2) the Equal Protection Clause of the Fourteenth Amendment, both in connection with his termination as the Commissioner for the Commonwealth of Massachusetts' Department of Industrial Accidents. Defendant Cellucci, the Lieutenant Governor of Massachusetts and Acting Governor during the rele-

vant period in the complaint, has moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), arguing Lane has failed to state a claim upon which relief can be granted. After careful review of the pleadings and motions, the motion to dismiss is granted.

## I. FACTUAL ALLEGATIONS

When deciding motions to dismiss, the Court treats all factual averments in the plaintiff's complaint as true, and draws all reasonable inferences in their favor. *Roth v. United States of America,* 952 F.2d 611, 613 (1st Cir.1991). The pleadings establish the following facts. On April 8, 1991, Lane was appointed to the position as Commissioner of the Department of Industrial Accidents by Governor William Weld pursuant to M.G.L. c. 23E § 1. As Commissioner, Lane charges he quickly became the target of special interests (both individuals and groups) involved with the proposed legislative overhauling of the Commonwealth's worker's compensation system. In response to the "tremendous" political pressure from the special interest groups directed toward the Weld administration, Lane charges that allegations of his incompetence as Commissioner were leaked to the press by sources within the Weld Administration. These allegations apparently increased after Lane attempted to remove his assistant, Stephen Silveira.

In June 1991, after Lane fired Silveira, Lane was contacted by the Secretary of Labor, Christine Morris, who allegedly told him, "you can't let him [Silveira] go because Cellucci wants him to stay on the payroll." In July 1991, Lane alleges he was told "directly" by Cellucci to leave Silveira alone because "Silveira is my friend." After this incident, Lane charges the Weld Administration "intentionally leaked false information to the press" stating that Silveira had "resigned" due to "conflicting management styles" with Lane, when in fact, Lane had fired him. Lane charges the purpose of this leak was

to show that Lane's management style alienated those who worked with him. Silveira remained on the Department payroll, even though it had been leaked to the press that he had resigned. Silveira was apparently considered to be a prime contender for Lane's job if Lane were to be "forced out." Silveira was supported by Representative Suzanne Bump.

Press leaks regarding Lane's incompetence also escalated after Gerald Benoit, Director of Claims Administration, was accused of wrongdoing regarding his worker's compensation settlement.[1] While Lane appointed Benoit to this position, Lane charges it was Governor Weld who directed Lane to hire him. Lane alleges that Representative Bump "defamed" both Benoit and Lane on the radio in an effort to remove Lane and replace him with Silveira.

Lane alleges he repeatedly demanded throughout this period that the Weld Administration provide him with the necessary personnel to staff his department, but these demands were ignored.

Through the newspaper, Lane learned Representative Bump was spearheading a legislative inquiry into the reforms being enacted by Lane. This inquiry was to take place on September 12, 1991. On August 27, 1991, Labor Secretary Morris told Lane to be present that day (August 27th) at the Governor's Council Room "to prepare for the September 12 meeting with Bump." When he arrived, he then learned that the subject of the meeting was whether he would retain his position as Commissioner. Lane alleges he was "intentionally tricked and coerced" by the Weld Administration, under the direction of then Acting Governor Cellucci, into believing the meeting was to prepare for the legislative inquiry.

Lane charges he had no notice of the meeting in order to prepare for the alleged charges brought against him; was never informed of any specific charges; was never given an opportunity to present evidence on his behalf, to hear any evidence against him, or to cross examine any witnesses;

---

**1.** *Benoit v. Weld, et al.,* 804 F.Supp. 393 (D.Mass. 1992) is also before this Court.

was never aware he could bring legal counsel or that legal counsel was necessary.

On August 29, 1991, Lane was terminated from his position as Commissioner. The termination letter, which was attached to the complaint, was signed by Acting Governor Cellucci[2] and stated:

> This is to notify you that, in accordance with Chapter 30, Section 9 of the Massachusetts General Laws, you are hereby removed for cause from your position as Commissioner of the Department of Industrial Accidents effective Thursday, August 29, 1991 at 5:00 p.m. The factual basis for this action has been explained to you and in meetings during which you were given an opportunity to be heard.[3]

As a result of his termination, Lane alleges he as suffered economic loss, pain and suffering, injury to his character and his standing in the community, and emotional distress to himself and his family.

## II. DISCUSSION

This case involves substantially the same issues as another case before me, *Benoit v. Weld*, 804 F.Supp. 393 (D.Mass.1992), involving the termination of Gerald Benoit, the Director of Claims Administration for the same department of which Lane was Commissioner. Since these issues were thoroughly treated in *Benoit*, which is issued today with *Lane*, I will not repeat the analysis with the same depth.

The complaint must be dismissed if it "plainly appears that the plaintiff[s] can prove no set of facts" entitling them to

recover. *Roth v. United States of America*, 952 F.2d at 613. Plaintiff sets forth three grounds for relief. First, he alleges he was deprived of a property interest in his position as Commissioner without due process of law. Second, he charges his reputation was damaged by Defendant, thereby implicating a protected liberty interest under the Due Process Clause. Third, he was denied equal protection under the law because he was terminated due to political pressure which "lacked any rational basis."

### A. Property Interest

The position of Commissioner of the Department of Industrial Accidents is described in M.G.L. c. 23E § 1. It provides that the Governor shall appoint the Commissioner "to serve for a term coterminous with that of the governor." The position of Commissioner is classified under M.G.L. c. 30 § 45 and the salary is determined in accordance with M.G.L. c. 30 § 46. M.G.L. c. 23E § 1. Section 4 of chapter 23E places the Commissioner in Job Group M–X, "notwithstanding any provision of chapter 30 to the contrary."

■ As a result of this job classification, the Commissioner, by statute, has no tenure in his job.

> Notwithstanding the provisions of sections nine A, nine B and nine D[4] of this chapter or any other provision of law, after June twenty-seventh, nineteen hundred and eighty-one, no person appointed to a position allocated to job group M–V

---

**2.** The Massachusetts Constitution, Pt. 2, c. 2, § 2 Art. III provides that the lieutenant governor "shall perform the duties incumbent upon the governor" and shall have and exercise all the governor's powers and authorities whenever the governor is absent from the Commonwealth.

**3.** Attached to Lane's termination letter was the following entitled "Explanation of Cause:"
As explained to you in detail during meetings with Secretary Morris and members of the Governor's Staff, your performance as Commissioner of the Department of Industrial Accidents has been unacceptable for the following reasons:
1. You have not sufficiently acted upon the Administration's initiatives or promises you made to the Commerce and Labor Committee in June of 1991.

2. Despite repeated admonitions, your grasp of the law, the operations of the Industrial Accident Board, and the Administration's reform proposals is below what is minimally necessary and required of you as Commissioner.
3. Your conduct, as well as your managerial style, have alienated the different groups both inside and outside the Department that you must work with in order to reform the system, and thereby jeopardized the Administration's reform objectives.
4. You have been advised of these deficiencies throughout your employment, but have made no progress in correcting them.

**4.** Sections nine A, B and D do not apply in Lane's case.

through M–XIII, inclusive, of the management salary schedule provided in section forty-six C shall acquire tenure in any such position.

M.G.L. c. 30 § 46F. Lane charges that M.G.L. c. 30 § 9, which gives hearing rights to public officers appointed by the governor, applies to Lane. However, c. 30 § 46F, quoted above, specifically overrules "any other provision of law." Therefore, as a M–X manager, Lane has no tenure in his position and is not entitled to such hearing rights.

■ Lane argues his contract of employment contains an implied covenant of good faith and fair dealing which is a property right within the meaning of the Fourteenth Amendment. In addition, he argues an officially sanctioned rule of the workplace existed whereby public officers like Lane were given continued employment upon good behavior and competent performance. These arguments were fully discussed in *Benoit,* 804 F.Supp. at 397. Neither creates a property interest, particularly in the case of Lane, who is an even higher ranking policy making official than Gerald Benoit.

### B. *Liberty Interest*

■ Lane argues he has a liberty interest which was infringed upon when Cellucci disseminated false and defamatory charges about Lane, damaging his associations and standing in the community, and otherwise stigmatizing him. Employees who seek to clear their name when their employer has created and disseminated a false and defamatory impression about them in connection with their termination are entitled to a name clearing hearing. *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 74 (1st Cir. 1990); *Smith v. Commissioner of Mental Retardation,* 409 Mass. 545, 550, 567 N.E.2d 924 (1991).[5]

■ The complaint alleges that statements to the press regarding his incompetence were leaked by the "Weld Administration." The termination letter signed by Cellucci contains no specific false or defam-

atory information. It is not alleged the "Explanation of Cause," even if false or defamatory, was ever disseminated publicly. Lane charges that Representative Bump "defamed" him, but she is not a defendant in this action. Lane makes generalized allegations about press leaks regarding his incompetence, which he attributes to the "Weld Administration." Cellucci is being sued in his individual capacity for these acts. The complaint must allege specific facts against *Cellucci.* Cellucci is not responsible for the actions of any other governmental officials. *See Kentucky v. Graham,* 473 U.S. 159, 168, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985) (stating that there is no *respondeat superior* liability in § 1983 actions). If Cellucci could be held responsible in his individual capacity for actions of persons acting in their official capacity, then Lane would be able to collect monetary damages for the actions of state officers in their official capacity, in direct violation of the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Since there are no false or defamatory statements disseminated by Cellucci, no liberty interest exists in his employment.

### C. *Equal Protection*

Lane alleges he was singled out for discipline without any rational basis in violation of the Equal Protection Clause of the Fourteenth Amendment. He alleges the discrimination occurred because he was a "political embarrassment and/or liability" and did not get the same due process other "public officers" under M.G.L. c. 30 § 9 are afforded.

Since the Court has determined that the provisions of c. 30 § 9 have been specifically overruled by c. 30 § 46F, this argument is without merit.

■ As for Lane's claims that he was terminated because he was a political embarrassment and/or liability, the First Circuit has clearly and repeatedly stated that high ranking policy making officials may be terminated for political reasons. *Figueroa–Rodriguez v. Lopez–Rivera,* 878

---

**5.** These tests are more fully discussed in *Benoit,* 804 F.Supp. at 397–98.

F.2d 1478, 1480 (1st Cir.1989); *Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138, 143 (1st Cir.1986). In fact, this rule applies to officials with less responsibility than Lane, including Gerald Benoit. This issue is thoroughly discussed in *Benoit*, 804 F.Supp. at 398–99.

 Lane was appointed Commissioner of the Commonwealth's Department of Industrial Accidents by the Governor. As such, his ability to fulfill certain duties and political priorities of the Governor were vital to his continuing in that role. His complaint is filled with allegations of the problems encountered in the political world: problems with special interests; and problems with Representative Bump, who chaired the legislative committee that oversaw the reform of the worker's compensation system. The termination letter's Explanation of Cause lists, among other items, Lane's inability to achieve the Governor's political objective of reforming the worker's compensation system. The Governor's, or in this case the Acting Governor's actions in terminating Lane were completely appropriate.

### III. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted.

SO ORDERED.