Fishman, Kenneth J., J.
INTRODUCTION
This matter comes before this Court on the defendants Town of Dracut (the Town), Warren Shaw (Shaw) and Dennis E. Piendak’s (Piendak) motion for sum-maryjudgment. The plaintiff, Ernest Gauthier (Gauth-ier), brought this civil action against the defendants after he was terminated from his position as building inspector for the Town. Gauthier claims that the Town, Piendak (the town manager) and Shaw (a town selectman) terminated him after he refused to participate in the Town’s alleged favor-laden and inconsistently-administered system of code enforcement. Gauthier raises claims under the Massachusetts Whistleblower Statute (Count I, against the Town), Article XVI (Count II, against all defendants) and X (Count III, against all defendants) of the Massachusetts Declaration of Rights, and under the Massachusetts Civil Rights Act (Count IV, against all defendants). Gauthier also alleges common-law claims of wrongful discharge (Count V) and interference with advantageous relations (Count VI) against Shaw and Piendak individually. After hearing, and for the reasons set forth below, the defendants’ motions for summary judgment are ALLOWED in part, and DENIED in part.
BACKGROUND
The summary judgment record reveals the following undisputed facts. On or about November 3, 1998, the Town hired Gauthier as its building inspector. At the time he was hired, Gauthier held an inspector’s license. State law required that he take and pass a building commissioner’s examination within eighteen months of being hired. He took and passed that examination in 2000. Gauthier knew that the prior building inspector had been investigated by several law enforcement agencies, and he observed those agencies searching Town flies relative to those investigations. The prior inspector had also been accused of sexual harassment and irregularities related to the issuance of permits for undersized lots. The Town never subjected the previous inspector to formal disciplinary procedures when several of those charges proved to be true. Gauthier also submits that the previous building inspector was far more lenient with regard to code enforcement.
Dennis Piendak has served as Dracut’s town manager since 1986. In that capacity, Piendak serves as the town’s chief administrative officer. As part of his duties, he appoints and removes department heads, including the town’s building inspector. Warren Shaw served at all relevant times as one of the Dracut town selectmen.
Gauthier and Piendak clashed frequently. Town residents, aggrieved by Gauthier’s negative decisions, complained to the town selectmen and Piendak on several occasions. Among the major areas of conflict were access issues at the local senior center, including *580 Gauthier’s actions relating to access which arose during construction. Another related to fireproofing requirements at the proposed junior high school. Gauthier, dissatisfied with plans submitted by the contractor, called in the state inspector for assistance, a decision with which Piendak disagreed.
Yet another disagreement arose out of proposed renovations to a tavern owned by a local man named Maguire. In December 1999, Maguire accused Gauth-ier of shouting at a bartender in Maguire’s Dracut tavern. Gauthier contends that Piendak took Maguire’s side, and that Piendak would, without fail, side with anyone who complained against him. Mag-uire complained in two letters to Piendak (dated December 12, 1999 and November 10, 2001) about his interactions with Gauthier.
The record reflects a number of complaints against Gauthier by residents in the town. The record also contains affidavit evidence indicating that complaints against building inspectors may occur even under ideal circumstances. Another dispute coming to Piendak’s attention arose between Gauthier and a local businessman (Paul Paquin) concerning signage on the exterior of his business. Paquin had replaced several large signs, and when Gauthier informed him that the signs did not conform with the building code, Paquin became enraged. In July 2001, another Dracut resident, Dawn Brazeau, complained to Piendak about an interaction with Gauthier. These complaints and others led to a heightening of tension between Piendak and Gauthier.
A major conflict concerned the Severance Trucking terminal in Dracut. The terminal abutted the property of Susan Janeczek, the defendant Shaw’s girlfriend. The facility opened in the late 1990s after the company received a special- permit from the Dracut selectmen. In early 2000, Janeczek, accompanied by Shaw, visited Gauthier at the building department to complain about noise from the terminal. Gauthier, during the spring of 2000, issued a cease-and-desist order against Severance. That order remained in place into the summer, and was eventually lifted. Janeczek continued to complain about the noise, however. Gauthier felt pressured by Piendak to continue the enforcement action against Severance, but more inspections yielded no violation of the special permit. During this time, much discussion occurred within the town relating to the issues at the terminal, and Gauthier contends that Shaw spoke to him in a manner which made Gauthier believe that Shaw was seeking to have him fired.
Gauthier also alleges that during autumn of 2001, Piendak threatened to get rid of him just as the City of Lowell had got rid of its building inspector. Also, during this time period, Gauthier again clashed with Maguire. Gauthier refused Maguire’s request for a building permit to expand his Dracut tavern because Maguire provided insufficient plans. Gauthier claims that Maguire threatened his job. This led to a meeting between Maguire, the assistant town manager, and Gauthier. Maguire also discussed his dispute with Gauthier with four town selectmen. In addition, Mag-uire solicited complaints about Gauthier on a local television program which Maguire hosted. Immediately following his meeting with the assistant town manager and Maguire, Gauthier referred the matter to the building inspector in neighboring Tyngsboro.
The final incident concerned the proprietor of a local used car dealership. Earlier that summer, Gauthier had cited the dealership for exceeding the maximum permissible number of junk cars on the lot. During a reinspection on November 30, 2001, Gauth-ier determined that the violations had not been corrected, and again cited the dealership. The proprietor complained to Piendak. On December 3, 2001, Piendak and Gauthier met in Piendak’s office. The two argued, and Piendak terminated Gauthier’s employment. Three days later, Maguire praised Gauthier’s termination on his television program, and cited the many disagreements between Piendak and Gauthier as the reason for it. Gauthier currently serves as building inspector to the Town of Winthrop.
DISCUSSION
This Court applies the well-established and oft-stated rules of summary judgment. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 712-15 (1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); Cassesso v. Cornm’r of Correction, 390 Mass. 419, 422 (1983). Each of Gauthier’s six claims in his complaint are addressed below.
A. G.L.c. 149, §185— MASSACHUSETTS WHISTLEBLOWER ACT (COUNT I AGAINST THE TOWN)
In Count I, Gauthier clams that the defendants retaliated against him after he refused to comply with their demands that he improperly perform his code-enforcement duties. Gauthier contends that, by firing him, the defendants retaliated against him for his failure to issue permits and violations that were legally unsupportable. The defendants argue that Gauthier cannot establish the requisite causal connection between his enforcement of the relevant codes and his termination. They also claim that Gauthier was fired as a result of his abrasive personality.
To succeed on his claim under the Whistleblower Act, Gauthier must show that he engaged in protected activity of which the employer was aware, that he suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse action. Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001). The term “protected activity” embraces an employee’s refusal to participate in a practice, policy or activity which he reasonably believes violates the law. G.L.c. 149, §185(b)(3). Although this issue is addressed further in the discussion of the constitutional claims below, it is noted at this juncture *581 that, for summaiy judgment purposes, the plaintiff has made a sufficient showing to satisfy the “protected activity” prong of the first element of a claim under the Whistleblower Act.
Of the three elements to be satisfied, Gauthier easily satisfies the balance of the first, as well as the second. The record is replete with evidence that Gauthier took his job seriously and endeavored to evenly administer the codes for which he was responsible. The record further indicates that Gauthier reasonably believed that issuing the permits in question (or taking the adverse actions supposedly sought by Shaw) would have been in violation of law. Piendak and the Town terminated Gauthier, certainly an adverse employment action. The defendants’ primary argument in favor of their motion for summary judgment on this count is that Gauthier has proffered no evidence that there was a causal connection between his refusal to accede to Piendak and Shaw’s requests and that adverse employment action.
Gauthier has adequately alleged and provided affidavit evidence to the effect that he was terminated in retaliation for his code enforcement activities regarding the used car lot, the signage at Paquin’s business, the refusal to issue permits to Maguire and his enforcement activities at the Severance depot. While some of those incidents are remote in time from Gauthier’s actual termination, the record shows that they occurred in something of a linear progression, culminating when Piendak finally fired Gauthier. The actual motives of Town officials Piendak and Shaw are disputed questions of material fact inappropriate for resolution at summary judgment. The defendantTown of Dracut’s motion for summaiy judgment on Count I of Gauthier’s complaint must therefore be denied.
B. CONSTITUTIONAL CLAIMS (COUNTS fi-IV AGAINST ALL DEFENDANTS)
In Counts IITV of his complaint, Gauthier alleges violation of the Massachusetts Civil Rights Act (MCRA), and wrongful discharge in violation of Articles XVI and X of the Massachusetts Declaration of Rights. Gauthier claims that he was not provided with the procedural due process provided for in the Dracut Town Charter, and that he was fired summarily as a result of his speaking out and his refusal to comply with the demands of Shaw and Piendak to enforce the code inconsistently and improperly. The defendants argue that his Article X claim fails because the employment security provisions in the charter do not apply to Gauthier. Dracut argues that the MCRA does not apply to towns. Piendak and Shaw also maintain that they did not interfere with Gauthier’s work, and that Gauthier was not speaking out as a citizen upon matters of public concern, for Article XVI purposes. The defendants also claim that Piendak and Shaw are entitled to qualified immunity.
In Count II, the plaintiff claims harm to his rights under Article XVI of the Massachusetts Declaration of Rights, which Article protects the rights of Massachusetts citizens to freedom of speech. Gauthier alleges that the defendants fired him for speaking out on a matter of public concern — the prevailing methods of code enforcement in Dracut.
Gauthier, in Count III, also claims injuiy to his procedural due process rights, as guaranteed by Article X of the Massachusetts Declaration of Rights, because the defendants failed to comply with the employment security provisions in the Dracut town charter. The town contends that those provisions do not apply to Gauthier, and that even if they did, they fail to create the requisite level of property interest in the position to implicate the Massachusetts Constitution.
1. G.L.c. 12, §11H (Massachusetts Civil Rights Act)
The inquiiy into the specifics of the Article X and XVI claims also fulfills an important role with regard to the plaintiffs claim under the MCRA. To succeed, the plaintiff must prove that “his exercise of rights secured by the Constitution or laws of either the United States or of the Commonwealth, have been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by ‘threats, intimidation or coercion.’ ” Reproductive Rights Network v. President of the University of Massachusetts, 45 Mass.App.Ct. 495, 505 (1998), quoting Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996). Gauthier alleges that the defendants fired him in violation of the Town charter, thereby interfering by threats, intimidation or coercion with Gauthier’s due process and free speech rights.
1. Secured Right — Article XVI (Free Speech)
“The inquiry into the protected status of speech is one of law, not fact.” Connick v. Myers, 461 U.S. 138, 148 n.7 (1983). In determining whether Gauthier’s statements merit Constitutional protection, the court must employ a First Amendment analysis. Smith v. Comm’r of Mental Retardation, 409 Mass. 545, 552 (1991). The test consists of three parts. First, a determination must be made whether Gauthier made his statements “as a citizen, in expressing himself on matters of public concern” or simply as an employee upon matters only of personal interest. Connick, 461 U.S. at 147. Second, the strength of Gauthier’s interest, as a citizen, expressing himself on a matter of public concern must be balanced against the Town’s interest, as an employer, in delivering efficient services. Tang v. Rhode Island Dep’t of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998). Finally, if Gauthier’s and the public’s free speech interests outweigh the Town’s interest in curbing the speech, Gauthier must show that the protected expression was a substantial motivating factor in an adverse employment action. Id.
a. Matter of Public Concern
Whether Gauthier’s statements implicate matters of public concern is a question of law embracing an *582 inquiry into the statements’ content, form and context. Connick, 461 U.S. at 147-48. In this case, Gauthier claims Constitutional protection for his conduct and statements enabling citizens to conform to standards of public safety, his statements challenging the Town Manager to conform to the building code,[2] his efforts to cease the unlawful interference with operations at the Severance depot, and his actions at the senior center and his denial of Maguire’s permits. The defendants argue that Gauthier made his statements and conduct simply as an employee in the course of his duties.
In the context of the comprehensive regulation of building codes by governmental entities, and the voluminous and complex statutes and rules governing code enforcement across the Commonwealth, Gauthier’s speech becomes speech protected by the Declaration of Rights. Whether Gauthier’s complaints also encompassed matters of private dispute, such as his pay raise, is immaterial to this analysis, and does not nullify Piendak and Shaw’s attempts to pressure Gauthier in his efforts to comport with his responsibilities as building inspector.[3] As the Appeals Court noted in Howcroft, 51 Mass.App.Ct. at 587-88, the case of Myers v. Hasara, 226 F.3d 821 (7th Cir. 2000), is illustrative. In Myers, the plaintiff, a city health inspector, was disciplined for having told the manager of a mall that one of his tenants was in violation of its required permit and that the city had decided to take no action against the tenant. The plaintiff sued, and the city defended on the grounds that she was concerned with the dispute with her supervisors over the permit, not with a matter of public concern. Id. at 827. The court dismissed the argument, stating, “(i]t is important to good government that public employees be free to expose misdeeds and illegality in their departments.” Id. at 826. “Whistleblowing does not need to be limited to systemic charges of corruption to qualify as a matter of public concern. A specific violation of a law that creates a risk to public health, safety or good governance likewise is a matter of public concern.” Id. at 827. Thus, for summary judgment purposes only, the plaintiff has made an adequate showing that his speech was on a matter of public concern.
b. Pickering Balancing
The next step in the analysis is to balance the strengths of Gauthier’s and the public’s constitutional interests against the countervailing Town interest in promoting efficient services. See Pickering, 391 U.S. at 568. This balancing recognizes “the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment.” Rankin v. McPherson, 483 U.S. 378, 384 (1987). Neither party devotes any attention to this element of the test in their pleadings. The defendants offer no reasons why Gauthier’s actions would have undermined the effective functioning of the building inspector’s office, and Gauthier offers evidence indicating that he felt hamstrung in his duties from the constant interference of Piendak and Shaw. This Court, therefore, declines to grant summary judgment on this grounds.
c. Causation
The defendants also seek summary judgment on the grounds that Gauthier cannot establish a causal connection between his protected speech and his termination. At trial, Gauthier would need to prove that his speech was a substantial or motivating factor in the defendants’ decision to fire him. See Mt Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). The affidavit evidence submitted by Gauthier satisfies this element, particularly in his statement that Piendak threatened his job and intimated that he would be fired just as the City of Lowell had terminated its building inspector. Accordingly, the defendants are not entitled to summary judgment on Gauthier’s free speech claims.
2. Secured Right — Article X (Due Process)
Gauthier claims that he was fired from his position as building inspector in violation of his procedural due process rights as guaranteed by Article X of the Massachusetts Declaration of Rights. He rests this claim on certain provisions in the Dracut town charter, specifically the portion entitled “employment security.”[4] That section reads, in relevant part:
No full time employee of the town . . . shall suffer dismissal unless he first receives a verbal warning from his superior that specified employment misconduct could result in termination. Serious or repeated employment misconduct shall be the subject of a written warning by the town manager that such activity could result in termination; but, after issuing such written warning, the town manager shall, on the occasion of the first warning, only suspend the employee for an appropriate time without compensation. Upon further written warning, the town manager may dismiss said employee, who shall be provided with written reasons for his dismissal upon his request.
Article 7, Section 14, Town of Dracut Charter.
In order for Gauthier to have a constitutionally-protected interest in continued employment, he must have a “property” right in it. “To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it.” Costello v. School Committee of Chelsea 27 Mass.App.Ct. 822, 827 (1989). “Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . ..” Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 538 (1985) (internal quotations omitted). Although the provisions in the charter are clear and unambiguous, and the defendants admit the failure to *583 comply with those provisions, rules or a statute (or in this case, a town charter) which “merely condition an employee’s removal on compliance with certain specified procedures do not establish a constitutionally protected property interest” Smith v. Commissioner of Mental Retardation, 409 Mass. 545, 549 (1991), quoting Bishop v. Wood, 426 U.S. 341, 345 & n.8 (1976). Disciplinary or discharge procedures do not convert a provisional employee’s interest in his or her employment into constitutionally protected property. Rafferty v. Commissioner of Pub. Welfare, 20 Mass.App.Ct. 718, 723 (1985) (involving an at-will employee).
Nevertheless, “[a] person’s interest in a benefit is a ‘property’ interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.” Perry v. Sinderman, 408 U.S. 593, 601 (1972). The question, therefore, is whether such rules or “mutually explicit understandings” appear in the record. Gauthier’s employment was not probationary or conditional, as in Smith v. Comm’ r of Mental Retardation, 409 Mass. 545 (1991), or Rafferty, nor are there facts from which this Court could conclude that Gauthier had an expectation of permanent employment, as in Perry. The relevant provisions in the town charter, however, closely resemble, the discharge or disciplinary procedures the Supreme Judicial Court found lacking in Smith, 409 Mass, at 549. That similarity, along with the lack of any explicit or mutual understandings like those in Perry, 408 U.S. at 601, constrain this Court to conclude that Gauthier may not press his due process claims, despite the clear and unambiguous provisions in the Town Charter. The defendants’ motions are allowed as to Gauthier’s due process claims.
3. Conclusions on Constitutional Claims
Gauthier has established a sufficient evidentiary basis to present a genuine issue whether Piendak and Shaw engaged in a pattern of harassment and intimidation in an attempt to suppress the free speech rights of Gauthier regarding code enforcement in Dracut, as discussed above. The record and relevant law, however, demonstrate no basis for Gauthier’s due process claims. The Plaintiffs allegations are supported by the summary judgment record, including the defendants’ deliberate disregard of State law regarding code enforcement, particularly with regards to the Severance trucking depot, and Maguire’s tavern. Gauthier’s claims that Piendak threatened explicitly to terminate him, and that Shaw accompanied his girlfriend to Gauthier’s office in demanding specific code enforcement actions, present triable issues as to whether Shaw and Piendak attempted to silence Gauthier through a pattern of harassment and coercion, amounting in sum to prohibited intimidation. Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. at 474. Accordingly, the defendants’ motion for summary judgment on Count IV of Gauthier’s complaint is allowed to the extent it alleges any due process violations but denied as to Gauthier’s free speech claims. Inasmuch as Counts II and III are repetitive of Count IV, they are dismissed.[5]
4. Qualified Immunity
The defendants claim as an affirmative defense that Shaw and Piendak are entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity is intended to shield public officials “from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.” Anderson v. Creighton, 483 U.S. 635, 638 (1987). “Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Saucier v. Katz, 533 U.S. 194, 200 (2001). In assessing this defense, the courts consider a sequence of questions: (1) whether the facts as alleged make out a constitutional violation; (2) whether that right was clearly established; and (3) whether a similarly situated reasonable official would have understood that his conduct violated clearly established law. Seward v. Rhode Island, 338 F.3d 23, 27 (1st Cir.2003). These questions must be resolved in this order, as the development of the law of qualified immunity is best served by the judicial exposition of the first two inquiries. Saucier, 533 U.S. at 201; see also Dirrane v. Town of Brookline, 315 F.3d 65, 69 (1st Cir. 2002).
Having concluded that some of Gauthier’s constitutional claims survive summary judgment, this Court must proceed to the next step of the qualified immunity analysis and determine whether, at the time of the defendants’ actions, those rights were clearly established. This requirement ensures “that before they are subjected to suit, officers are on notice that their conduct is unlawful.” Saucier, 533 U.S. at 206. The nature of Gauthier’s claims is not particularly obscure or novel. Gauthier’s affidavit evidences the defendants’ knowledge that they were directly retaliating against Gauthier as a result of his code enforcement activities. Again, the defendants devote no argument to this point, and have failed to establish that they are entitled to summary judgment.
The final question is whether a similarly-situated reasonable official would have known that his activities violated established law. On the summary judgment record, questions of motive and action remain manifestly unresolved. While this element of qualified immunity doctrine is rooted in objectivity, “if there is a factual issue in dispute as to an essential subjective element of the underlying claim, granting the defendant qualified immunity at the summary judgment stage would not be appropriate. Perez v. Agostini, 37 F.Sup.2d 103, 112 (D.P.R. 1999). This Court cannot determine what a similarly-situated official would have known because the record does not, at this point, demonstrate undisputed facts evidencing the state of *584 mind of the relevant town officials. Summary judgment on qualified immunity grounds is not appropriate.
5. Municipal Liability Under the MCRA.
Municipalities are not liable for claims based on the MCRA, on the grounds that a municipality is not a “person” covered by the MCRA, G.L.c. 12, §§11H, 111. Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 592 (2001). The Town therefore is entitled to summary judgment on Count IV of Gauthier’s complaint. ‘To avoid a [city’s] sovereign immunity to a damages suit, a plaintiff must sue the [city] official in his individual and not his official capacity.” O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n. 13 (1993). Inasmuch as the MCRA is simply a conduit for claims raised under the Massachusetts Declaration of Rights, the Town is also entitled to summary judgment on Counts II and III.
6. Analysis of Whistleblower Claims
Having determined that Gauthier has successfully established protected activity, for purposes of summary judgment, the remaining elements necessary to prevail on a claim raised under the Whistleblower Act need to be considered. The fact of Gauthier’s termination is undisputed, certainly an adverse employment action satisfying the second element of the three-part test. As previously noted, it is the third element upon which the defendants rest their summary judgment hopes. The defendants argue that Gauthier has no likelihood of establishing the presence of a causal connection between his refusal to accede to Rendak and Shaw’s requests and that adverse employment action.
The defendants bear the burden of establishing that Gauthier will not be able to prove his case at trial. Mass.R-Civ.P. 56. As discussed above, Gauthier has successfully alleged and provided affidavit evidence to the effect that he was terminated in retaliation for his code-enforcement activities regarding the used car lot, the signage at Paquin’s business, the refusal to issue permits to Maguire and his enforcement activities at the Severance depot. While some of those incidents are remote in time from Gauthier’s actual termination, the record shows that they are sufficiently related, and progressed to the point of Rendak’s termination of Gauthier. The actual motives of the Town officials Rendak and Shaw are disputed questions of material fact. The defendant Town’s motion for summary judgment on Count I of Gauthier’s complaint must therefore be denied.
C. UNLAWFUL DISCHARGE (COUNT V AGAINST PIENDAK AND SHAW)
Gauthier, recognizing that claims under the Whistleblower Act cannot be brought against supervisors in their individual capacities, brings claims against Rendak and Shaw sounding instead in wrongful discharge. An employer may not terminate an at-will employee “if the termination violates a clearly established public policy.” King v. Driscoll 418 Mass. 576, 582 (1994); Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992). The determination of whether a public policy is implicated in the discharge of an employee is a question of law for the court. “It is not for the jury to define the public policy. The judge must determine whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated.” Mello v. Stop & Shop Co., 402 Mass. 555, 561 n.7 (1988). The defendants argue that this Count is duplicative of Gauthier’s claim under the Whistleblower Act, claiming that Gauthier cannot assert a common-law claim of wrongful discharge in violation of public policy where the legislature has already provided a specific statutory remedy for such a claim. Gauthier attempts to refute this by asserting his claim against the individual defendants, an action he could not take under the Whistleblower Act, which permits action only against employers, as that act so defines them. This Court concludes that Gauthier may not state his common-law claim because the Legislature created a statutory remedy. See Grubba v. Bay State Abrasives Div. of Dresser Indus., 803 F.2d 746, 747-48 (1st Cir. 1986); Crews v. Memorex Corp., 588 F.Sup. 27, 28-29 (D.Mass. 1984); Mello, 402 Mass. at 557 (a claim for violation of public policy may be found “unless no common law rule is needed because the Legislature has also prescribed a statutory remedy”); Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 511-14 (1985), aff'd, 397 Mass. 1004 (1986); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 541-43, rev. denied, 399 Mass. 1105 (1987). The defendants are entitled to summary judgment on the common law wrongful discharge claims in Count v. of Gauthier’s complaint.
D. INTERFERENCE WITH ADVANTAGEOUS RELATIONS (COUNT VI AGAINST PIENDAK AND SHAW)
The defendants maintain that Count VI should be dismissed because they are not third parties amenable to suit for interference with Gauthier’s employment. To prevail on this Count, Gauthier must establish the existence of a contract, the defendant’s knowledge of that contract, the defendant’s intentional interference with that contract for an improper purpose or by an improper means, and damages. Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 397 (1996). While defendant-supervisors are entitled to a qualified privilege in an employment-based tortious interference case, this privilege may be overcome by a showing of actual malice. Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2000). Situations like that present here, involving a valid claim of retaliation, lend themselves to proof of malice. Id. at 77. Because the Whistleblower and civil rights claims still stand, Gauthier’s tortious interference claim survives summary judgment as well. As discussed above, genuine issues of material fact exist as to the defendant’s interference with Gauthier’s employment relationship. Rendak’s and Shaw’s motions for summary judgment on Count VI are denied.
*585 ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant Town of Dracut’s motion for summary judgment is ALLOWED as to Counts II and III of the plaintiffs complaint and DENIED as to Counts I and IV, to the extent Count IV alleges interference with the plaintiffs free speech rights. It is further ORDERED that the defendants Warren Shaw and Dennis E. Piendak’s motions for summary judgment are ALLOWED as to Counts II, III and v. of the plaintiffs complaint, and DENIED as to Counts IV and VI, again only to the extent Count IV alleges interference with the plaintiffs free speech rights.

Gauthier refers to the “Mayor" in his brief. As the record contains no evidence that Gauthier challenged the “Mayor” to conform to the building code, this Court reasonably infers that Gauthier’s counsel was actually referring to Town Manager Piendak.

It is not necessary to resolve whether Piendak and Shaw did actually pressure Gauthier (or retaliate against him), but this Court views the facts in the light most favorable to the plaintiff on summary judgment.

Gauthier has not argued a Fontana-style claim, concerning situations where a public employee is discharged as a result of stigmatization or defamatory charges by the employer and has not been given an opportunity for a name-clearing hearing. See Fontana v. Comm’r of the Metropolitan District Commission, 34 Mass.A.pp.Ct. 63, 64-65 (1993).

This Court also notes that nothing in the Whistleblower Act forecloses Gauthier’s claims arising out of the Declaration of Rights. That Act only precludes causes of action pursuant to a contract, collective bargaining agreement, state law, mle or regulation, or under common law. That Act does not address claims of constitutional dimension.