Roach, Christine M., J.
This is an action under the Massachusetts “Whistleblower’s Statute,” G.L.c. 149, Section 185 (“the statute”). Plaintiff pro se claims her termination as a project manager[1] for the Central Massachusetts Regional Planning Commission (“CMRPC”) was taken in retaliation for her speaking out about, and declining to participate in, matters which she reasonably believed to be illegal. Defendants maintain Plaintiff was terminated following an investigation, because her behavior on the job was insubordinate and otherwise inappropriate. Defendants have moved to dismiss the Complaint, pleaded in four counts, on a variety of grounds. Following hearing the parties on November 20, 2008, and review of all pleadings,[2] the Motion to Dismiss is ALLOWED.[3]
Factual Allegations Most Favorable to Plaintiff
Plaintiff was employed by CMRPC for two periods of time, 1993-1998, and again from 2004 to 2008. Beginning in 2007, her job was that of Project Manager for something called the “Worcester Regional Mobility Study” (“the Study”). Complaint, at paras. 20-22. The central focus of the Study was evaluating the potential for constructing an access road from Interstate Route 290 to the Worcester Regional Airport. The court takes judicial notice that a significant number of community and political stakeholders were interested in this potential project. Two players relevant to the Complaint in addition to CMRPC were the City of Worcester (“Worcester”) and the Massachusetts Port Authority (“Massport”). Plaintiffs boss, and the target of most of her allegations, was individual Defendant Lawrence Adams (“Adams”), in his capacity as Executive Director of the CMRPC. Complaint at page 3, and para. 3.
Plaintiff alleges that as the Study evolved, she developed concerns about what she perceived to be “the use of public funding to serve the interests of a few politically-connected stakeholders,” Complaint, at page 3, as well as compliance with state and federal law.[4] Complaint, at paras. 22 and 53. Specifically, Plaintiff alleges the following events occurred which constituted her reasonable belief of legal violations:
On June 26, 2007, an engineer from the Waterfield Design Group submitted by email to Adams and individuals working for Worcester one option for connecting an access road to the Massachusetts Turnpike. Plaintiff believed the Study should not consider this proposal unless the engineer “re-cused” himself from the possibility of bidding on the project. Complaint, at Exhibit A;
At a November 1, 2007 meeting an Assistant Worcester City Manager asked where in the Study there was a “guarantee” of a favorable outcome for an access road. Complaint, at para. 24;
On November 16, 2007 in a telephone conference call with Massachusetts Executive Office of Transportation (“EOTj officials Adams said, “it will be our intent to try and get a yes.” Complaint, at para. 25;
On January 25, 2008, Adams attended a meeting with Worcester and Massport during which the Study was discussed, which attendance Plaintiff believed “was undermining federally mandated public planning process as well as compromising the competitive bid process.” Complaint, at paras. 28-29 and Exhibit C; and
On February 15, 2008 Adams released a draft request for proposals for the Study to EOT, Massport and a member of the CMRPC Executive Committee who was also Economic Development Director for Worcester. Plaintiff “reported” this release. Complaint, at paras. 30-32, and Exhibits D & E.
Plaintiff expressed her concerns a number of times, orally and in writing, during the period in 2007 when she was first named Project Manager, through the first quarter of 2008. She commented to Adams as well as to other project managers at CMRPC over what she generally claims were potential “public process” violations by the Study. Complaint at paras. 26-32 and Exhibits A, C & E. Plaintiff alleges Adams “marginalized” her as a result of her expressions of concern. Complaint, at para. 23. These communications culminated in Plaintiffs “testifying” before the Executive Committee of the CMRPC, on March 12, 2008, on the subject of what she describes as “Adams’ activities and policies as Executive Director.” Complaint, at para. 33. Within six weeks of her statements to the Executive Committee, Plaintiff was terminated pursuant to CMRPC’s internal investigation of her. Complaint, at paras. 34-39.
Legal Standard
Exactly two months prior to Plaintiffs filing her Complaint, the Supreme Judicial Court refined the Massachusetts standard for motions to dismiss, adopting that set by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007): “While a complaint attacked by a... motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his entitle [ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). At the pleading stage, the plaintiff is required to present factual “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect! ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the plain statement possess enough heft to sho[w] that the pleader is entitled to *328 relief.” Id. The mere possibility of discovering undisclosed facts to support recovery is not sufficient.
The purpose of the statute at issue is to protect Massachusetts public employees who “reasonably believe” illegal conduct is occurring, but who might otherwise find themselves vulnerable to employer retaliation. G.L.c. 149, section 185; Bennett v. City of Holyoke, 230 F.Sup.2d 207, aff'd, 362 F.3d 1 (1st Cir. 2002).
Discussion
Two deficiencies of the Complaint rightfully singled out by Defendants’ Motion are not challenged by Plaintiff, and are easily resolved. First, the individual Defendants were not Plaintiffs employer, either for any putative contract with respect to a term of her employment (Count I), or for purposes of the Statute (Counts II-IV). Gauthier v. Town of Dracut, No. 03-2826, 2005 WL 166921, at *9 (Mass.Super. June 27, 2005); Ahanotu v. Massachusetts Turnpike Authority, 466 F.Sup.2d 378, 396 (D.Mass. 2006) [19 Mass. L. Rptr. 579). The Complaint contains no factual allegations that any of the individuals was acting other than within his or her scope of agency with the CMRPC. Thus all thirteen (13) of the individual Defendants must be, and are, dismissed from this action with prejudice.
Second, the contract claim against CMRPC contained in Count I of the Complaint cannot be pleaded alongside a Chapter 149 action. By bringing an action under this statute, an employee waives any state contract or tort claims arising out of essentially the same conduct which is the basis for the whistleblowing claim. G.L.c. 149, section 185(f); Haddad v. Scanlon, 1999 Mass.Super. LEXIS 272, *9-10 (July 16, 1999) (Welch, J.) [10 Mass. L. Rptr. 298). Count I therefore must be dismissed with prejudice.
The three counts remaining against employer CMRPC must also be dismissed with prejudice. Plaintiff has failed to plead by factual allegations any basis on which she could reasonably have believed, from all of the cited incidents, that CMRPC was actually violating state or federal law in its approach to the Study. Romero v. UHS Westwood Pembroke, Inc., 72 Mass.App.Ct. 539, 541-42 (2008) (analogous whistleblower statute applicable to healthcare facilities; no reasonable belief where no evidence of violation); Service v. Newport Housing Authority, 63 Mass.App.Ct. 278, 283 (2005) (common-law protections instructive on the breadth of the statute; alleged violation of office personnel policy no violation at all).
First, there is no allegation or factual explanation of how any federal (SAFETEA-LU) or state (procurement) statute might have applied to the work of CMRPC on the Study. As CMRPC points out, the SAFETEA-UA goals do not provide for judicial review. And any allegations of procurement violations would appear premature, given that the pre-issuance, drafting process is not regulated, and no final RFP issued before Plaintiff was terminated. G.L.c. 30B, sections 5 and 6. To the contrary, the attendance of a Study official at meetings of other interested agencies would appear to the impartial observer to be consistent with statutory policy goals of transparency and planning coordination.
Nonetheless, the court reads the Complaint as insinuating, broadly but continuously, some sort of nefarious conduct by Lawrence on behalf of CMRPC in connection with these other admittedly political entities. See, for example, Complaint at paras. 25, 28-33, 35. It is clear from Plaintiffs opposition papers that the violations she feared were speculative and hypothetical: “There are simply too many coincidences and fortunate financial benefits to the various parties to not lead a reasonable person to question favoritism and conflict of interest.” Opposition, at page 9. But coincidences and questions do not make a properly pleaded cause of action.
What the allegations do establish is that Plaintiff was given an opportunity to persuade other CMRPC officials of her views, but she failed to do so. Complaint, at paras. 33-34. Plaintiffs frustration upon finding herself at odds with her superiors, without more, is not a claim for whistle blowing. Rather, it is everyday life for many workers, particularly those who toil in institutional or bureaucratic settings.
In sum, what emerges from the allegations of the Complaint is a garden variety difference of opinion as between a manager and her boss with respect to appropriate procedures and policies to be followed for the Study. For example: Plaintiff “refused” to attend a meeting, Complaint at paras. 27-28 and Exhibit C; Adams attended the meeting “despite [her] verbal and written concerns”; and did not “brief’ her on the results of the meeting. Complaint at para. 29. What also emerges is Plaintiffs view that she knows more, and better, than her boss. In fact, she wanted his job: “Many of her colleagues anticipated her likely promotion to Executive Director upon the upcoming retirement of Mr. Adams. This was her stated career goal.” Complaint, at page 2.

For all of the reasons contained herein, all four Counts of the Complaint must be dismissed with prejudice. SO ORDERED.

 Plaintiff is trained as a lawyer, but was not employed in that capacity by Defendant.

Plaintiff has filed two affidavits in support of her opposition, which are not appropriate in the context of a motion to dismiss. The court has not considered them.

Plaintiff reports in her Complaint that she has also filed a separate complaint with the MCAD. Any discrimination claims are not before the court and have no bearing on the considerations herein.

The Safe, Accountable, Flexible, Efficient Transportation Equity Act — A Legacy for Users (“SAFETEA-LU”), 23 U.S.C. section 101 et seq.