MELISSA ROMERO *vs.* UHS OF WESTWOOD PEMBROKE, INC., & another.[1]

No. 07-P-931.

Middlesex. May 5, 2008. - September 8, 2008.

Present: GRASSO, TRAINOR, & WOLOHOJIAN, JJ.

*Health Care Facility. Employment,* Retaliation, Discrimination, Termination. *Anti-Discrimination Law,* Sex, Termination of employment. *Unlawful Interference. Contract,* Interference with contractual relations.

In a civil action alleging a violation of G. L. c. 149, § 187, the Massachusetts medical provider whistleblower statute, the judge properly granted summary judgment in favor of the defendant, a health care facility, where the plaintiff failed to demonstrate that she objected to any existing activity, policy, or practice of the defendant; where the record contained no evidence that the proposal to which the plaintiff objected (which was never adopted) violated any law, rule, regulation, or professional standard of practice; and where the claimed retaliatory conduct occurred before the plaintiff voiced her objection to the proposal. [540-543]

In a civil action alleging employment discrimination based on pregnancy, the judge properly granted summary judgment in favor of the defendant employer, where the record did not support the claim that an administrative reorganization was an adverse employment event, and the plaintiff did not produce evidence that she and the person to whom she reported as a result of the reorganization were similarly situated [543-545]; and where, with respect to the plaintiff's termination as part of a layoff, the plaintiff failed to meet her burden of producing sufficient credible evidence that the employer's proffered nondiscriminatory reasons for her layoff were merely a pretext [545-548].

In a civil action alleging intentional interference with advantageous business relations, the judge properly granted summary judgment in favor of the defendant, where the plaintiff, as a matter of law, could not satisfy the element of "improper motive or means" required to make out an interference claim. [548]

CIVIL ACTION commenced in the Superior Court Department on September 10, 2003.

[1]Robert Spiegel.

A motion for partial summary judgment was heard by *Julian T. Houston*, J., and the remaining counts were also heard by him on a motion for summary judgment.

*Jeffrey R. Mazer* for the plaintiff.

*Barbara S. Hamelburg* (*Laura Bernardo Sorafine* with her) for the defendants.

WOLOHOJIAN, J. The plaintiff, formerly the director of a partial hospitalization program (the Boston Center) of the defendant, UHS of Westwood Pembroke, Inc. (Westwood), appeals from the dismissal on summary judgment of her claims for (1) violation of G. L. c. 149, § 187, the Massachusetts medical provider whistleblower statute; (2) violation of G. L. c. 151B; and (3) intentional interference with advantageous business relations. The claims were based on an administrative reorganization of staff conducted by Westwood in April, 2002, that resulted in the plaintiff reporting to someone new, and on the plaintiff's subsequent termination as part of a reduction in force in July, 2002. In broad summary, the plaintiff claimed that both the reorganization and her subsequent termination were unlawful responses to her (a) objecting to proposed patient-to-staff ratio increases; and (b) notifying her employer that she was pregnant. On appeal, we view the record in the light most favorable to the plaintiff, *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), and "consider the record and the legal principles involved without deference to the motion judge's reasoning." *Zielinski* v. *Connecticut Valley Sanitary Waste Disposal, Inc.*, 70 Mass. App. Ct. 326, 334 (2007). We discuss each claim in turn below.

1. *General Laws c. 149, § 187.* Section 187 of G. L. c. 149 provides a cause of action to health care providers who are retaliated against for disclosing problems within health care facilities.[2] Section 187(*b*) prohibits health care facilities from "refus-[ing] to hire, terminat[ing] a contractual agreement with or tak[ing] any retaliatory action against a health care provider" for engaging in any of the acts protected under the section. The protected acts include those contained in § 187(*b*)(3), on which the plaintiff relies:

"object[ing] to or refus[ing] to participate in any activity,

---

[2]The section largely tracks the language of the Massachusetts whistleblower statute, which is not limited to health care providers. See G. L. c. 149, § 185.

> policy or practice of the health care facility . . . which the health care provider reasonably believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of professional standards of practice which the health care provider reasonably believes poses a risk to public health."

A claim under § 187(*b*)(3) requires the plaintiff to establish that (1) she objected to, or refused to participate in, an activity, policy or practice that (2) she reasonably believed to be in violation of a law, rule, regulation, or professional standard of practice, (3) which she reasonably believed posed a risk to public health,[3] and (4) she was retaliated against as a result.[4]

Summary judgment was properly entered on this claim for several reasons, not least of which being that the record does not show that the plaintiff objected to any existing "activity, policy, or practice" at Westwood. Instead, the record reflects that the plaintiff objected to a proposed increase in the patient census which, as a result of objections raised by her and others, was in fact never adopted.[5,6] General Laws c. 149, § 187, does not extend to mere proposals. Instead, the plain language of the

---

[3]For purposes of this section, a plaintiff's belief must be objectively reasonable. See *Lynch* v. *Boston*, 180 F.3d 1, 17 (1st Cir. 1999) (construing G. L. c. 149, § 185).

[4]The objection must be "a substantial or motivating part" of the adverse employment action. See *Taylor* v. *Freetown*, 479 F. Supp. 2d 227, 241 (D. Mass. 2007) (construing G. L. c. 149, § 185).

[5]In March, 2002, Robert Spiegel, the chief executive officer of Westwood, directed that the number of pediatric patients at the Boston Center be increased without an increase in staff. The plaintiff points to nothing in the record to indicate that she objected to this proposal before May 7, 2002, when she sent a memorandum that reflected her understanding that a census increase "has been proposed." The plaintiff did not object to an increase in the pediatric patient census per se; her objection was to an increase in census "without a formal plan in place and/or with realistic patient to staff ratio under agreement."

[6]Although the plaintiff argues in her brief that she objected to other items as well, such as the staffing grid, the record does not support her claim. The portions of the record to which she cites do not show that she informed anyone that she had an objection or complaint to any of those matters. In order to withstand summary judgment, the plaintiff was required, among other things, to put forward sufficient material to demonstrate that she voiced an objection. *Lyon* v. *Morphew*, 424 Mass. 828, 831 (1997), quoting from *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991) ("A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial").

statute refers only to existing activities, policies, and practices of a health care facility that are (the statute itself using the present tense) in violation of a statute, rule, regulation, or professional standard.

The policies underlying the statute would be undermined were we to extend it to include objections to proposals, particularly to proposals such as the one at issue in this case, that are never adopted. As reflected in the provision of the statute requiring that a health care facility be given notice of an objection in cases where the health care provider initially objects to a third party, a significant purpose of the statute is to "afford[] the health care facility a reasonable opportunity to correct the activity, policy or practice." G. L. c. 149, § 187(c)(1). In those cases, if the health care facility corrects the problem, the objecting health care provider has no claim. *Ibid.* For the same reason, the plaintiff should have no claim here: she and others objected to the proposed increase in the pediatric patient census and, as a result, the proposal was abandoned. This salutary internal debate among health care professionals regarding how best to handle their medical practice is not the basis for a claim under G. L. c. 149, § 187.

Summary judgment was also appropriately entered on this claim because the record contains no evidence that the proposal violated any law, rule, regulation or professional standard of practice. The record contains no evidence of any law, rule, regulation or professional standard governing the patient census or imposing a particular patient-to-staff ratio for a facility such as the Boston Center. In the absence of any such evidence, as a matter of law, the plaintiff could not have had an objectively reasonable belief that the proposed patient census increase was in violation of any statute, rule, regulation or professional standard. See *Lynch* v. *Boston,* 180 F.3d 1, 17 (1st Cir. 1999) (construing G. L. c. 149, § 185). The plaintiff's personal views on the proposed patient census increase, unsupported by reference to any statutory, regulatory or professional standard of practice, were not enough to support her claim.

Finally, to the extent that the plaintiff claims that the administrative reorganization that was announced on April 10, 2002, was retaliatory conduct within the meaning of § 187, that argument fails because the reorganization was announced before the

plaintiff objected to the proposed patient census increase. The plaintiff has pointed to nothing in the record reflecting any date on which she aired her objection to the proposal apart from May 7, 2002, the date she sent a memorandum voicing her objections. It is logically and legally impossible for the claimed retaliatory conduct to have occurred before the plaintiff voiced her objection.

For each of these reasons, summary judgment was appropriately entered in Westwood's favor on the plaintiff's claim under G. L. c. 149, § 187.

2. *General Laws c. 151B.* In March, 2002, approximately six months after she was hired, the plaintiff informed her supervisor that she was pregnant with an expected delivery date in September. She contends that, as a result of this disclosure, Westwood took the same two adverse employment actions against her upon which she rested her whistleblower claim: i.e., as part of the administrative reorganization, she no longer reported directly to the chief executive officer, Robert Spiegel, and she was terminated as part of a reduction in force.

A plaintiff must prove four elements to succeed on a claim under G. L. c. 151B: "membership in a protected class, harm, discriminatory animus, and causation." *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 502 (2001). There is no dispute in this case as to the first element: the plaintiff was pregnant. As to the second element, there is no dispute that her termination constituted actionable harm, but there is disagreement whether the structural reorganization did. In an indirect evidence case, such as this one, the third and fourth elements may be established using the familiar three-stage, burden-shifting paradigm, which we set out in the margin.[7]

---

[7] In stage one, the plaintiff has the burden of establishing a prima facie case of discrimination by showing that (1) she was in a protected class; (2) she performed her job at an acceptable level; (3) she suffered an adverse employment event; and (4) her employer sought to fill her position with an individual with similar qualifications; or, in the case of a reduction in force, her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116 (2000); *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 44 (2005). If the plaintiff establishes a prima facie case, she is entitled to a " 'legally mandatory, rebuttable presumption' that [the employer] unlawfully

a. *The April reorganization.* It was undisputed that Spiegel, Westwood's chief executive officer, "began to consider the restructuring of Westwood's child and adolescent partial hospitalization programs" in late January or early February, 2002 — in other words, before the plaintiff informed him that she was pregnant. Contrary to Westwood's argument, however, this does not dispose of the plaintiff's claim, because Spiegel never stated when he decided to go forward with the restructuring or when he decided to have the plaintiff report to a newly-created director of child and adolescent partial hospitalization services.

Summary judgment, however, was properly granted because the record did not support a finding that the administrative restructuring was an adverse employment event. The plaintiff concedes that the restructuring did not change her job duties or her pay. She also admits that the restructuring did not "cause any difficulties for [her] in terms of [her] job function," or in her "employee status." However, she argues that "the restructuring [created] a redundancy" between her duties and those of her new supervisor, which facilitated her later termination as part of the reduction in force. This argument might have had some appeal had the plaintiff pointed to anything in the record to support her assertion that redundancies were created. Absent any such evidence, the reorganization did nothing more than create a new layer of reporting between the plaintiff and Spiegel. As a result of

terminated her, and she will prevail on her claims if [the employer] fails to satisfy its burden at the second stage of the framework." *Id.* at 40-41, quoting from *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 254 n.7 (1981).

At stage two, the employer "can rebut the presumption by articulating 'a lawful reason or reasons for its employment decision [and] produc[ing] credible evidence to show that the reason or reasons advanced were the real reasons.' " *Abramian* v. *President & Fellows of Harvard College, supra* at 116, quoting from *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138 (1976). The burden on the employer is one of production and not persuasion. See *Sullivan* v. *Liberty Mut. Ins. Co., supra* at 51. If the employer succeeds in carrying its burden of production, the presumption of discrimination disappears and stage three becomes applicable. *Id.* at 54.

"At the third stage the employee must show that the basis of the employer's decision was unlawful discrimination." *Abramian* v. *President & Fellows of Harvard College, supra* at 117. Discriminatory animus and causation may, but need not, be inferred from proof that the employer offered a false reason for the adverse employment decision. *Lipchitz* v. *Raytheon Co., supra* at 502.

the reorganization, the plaintiff, instead of reporting directly to Spiegel, reported to Daniel Litwack (who was appointed the director of child and adolescent partial hospitalization services), who in turn reported to Spiegel. Standing alone, this was insufficient to constitute an adverse employment action. See *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 663 (1996) (the fact that "[d]uties were rearranged and new reporting structures devised" did not amount to adverse employment action).

Summary judgment was also appropriate because the plaintiff came forward with no evidence to show that Litwack and the plaintiff were similarly situated. The plaintiff provides no comparison of Litwack's position, duties, pay, and experience with her own, whether in his new position or in his previous position at Westwood. Westwood's undisputed evidence, on the other hand, was that Litwack had been employed longer at Westwood and had greater previous experience than the plaintiff.[8] In the face of this evidence presented by Westwood, the plaintiff did not meet her burden of presenting evidence sufficient to withstand summary judgment with respect to the reorganization.

b. *The July layoff.* The plaintiff's claim arising from her termination as part of a layoff in July, 2002, is more complicated. As the motion judge found, the plaintiff satisfied her burden in coming forward with sufficient evidence to establish a prima facie case for purposes of stage one of the burden-shifting paradigm. The motion judge also properly determined that Westwood had amply met its burden of articulating nondiscriminatory reasons for the layoff and of presenting credible evidence that its reasons were the real reasons for laying off the plaintiff.[9] This case, therefore, falls squarely within the analytical framework of *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass.

---

[8]Westwood also came forward with evidence that Litwack was promoted because of "prior work experience, his initiative in developing a new milieu-based program, his excellent work performance while at Westwood, his marketing efforts and his length of service with Westwood." Further, it articulated several business reasons for the reorganization, including the need to reduce the number of Spiegel's direct reports, the desire to promote uniformity and consistency across programs, and more coordinated marketing efforts. As a result, Westwood met its stage-two burden for summary judgment purposes.

[9]The July, 2002, layoff was one of three that took place during that year at Westwood's various facilities, all of which were necessitated by the company's financial struggles. At the end of June, 2002, the Boston Center showed a pre-

34 (2005), in which the Supreme Judicial Court reviewed the granting of summary judgment in a case involving a reduction in force. *Sullivan* turned, as this case does, on whether the plaintiff had come forward with sufficient "credible evidence that [the employer's] proffered reasons for her layoff were merely a pretext for a true intent of [pregnancy] discrimination." *Id.* at 55. "This may be accomplished by showing that the reasons advanced by [Westwood] for making the adverse decision are not true." *Ibid.*, quoting from *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 117 (2000).

Westwood pointed to ample evidence in the summary judgment record that the July, 2002, systemwide layoff was necessitated by financial losses. See note 9, *supra*. The Boston Center alone had posted pretax losses of more than $96,000 through June, 2002. The plaintiff herself acknowledged her understanding that if the patient census did not improve, staffing at the Boston Center would need to be reduced. The plaintiff does not attack or dispute the evidence of financial losses. Instead, she argues that pretext can be inferred from the facts that (a) Litwack was not terminated; (b) the director of the Lowell program (a

tax loss of slightly more than $96,000. Although, as director of the Boston Center, the plaintiff managed to raise patient census somewhat during her tenure, the census did not come close to Westwood's census goals. As a result, the Boston Center was overstaffed, which was a significant factor in Westwood's financial problems. At no time during the plaintiff's tenure was the Boston Center's staff within budgeted levels. In June 2002, the plaintiff was informed that if the Boston Center's patient census did not increase, a staffing cut would be necessary. The plaintiff confirmed that if the census did not "significantly change in the coming week," an employee at the Boston Center would be terminated. "If you have now determined that . . . you want staff reduction, I will put that process into motion."

Moreover, Westwood showed that it was not a workplace likely to have engaged in pregnancy discrimination. At the time the plaintiff was hired, eighty-one percent of Westwood's management was female; seventy-two percent of Westwood employees were female; and the entire clinical staff of the Boston Center was female. The composition of the layoff was comparable to the staff composition: five out of the six employees laid off were female. If anything, the sole man laid off was statistically treated worse in that he was one of two of the laid off employees who was not offered a comparable position after the layoff.

The picture with respect to Westwood's environment for those taking maternity leaves was similarly suggestive: in 2001 and 2002, twelve Westwood employees took Family Medical Leave Act leaves for maternity-related reasons.

nonpregnant woman) was not terminated; and (c) unlike four of the six employees who were terminated (all nonpregnant women), the plaintiff was not offered a comparable position at Westwood after her termination.[10] None of these rebuts Westwood's "proffered reasons for laying off [the plaintiff] and does not, by itself, create reasonable inferences of discriminatory animus and causation." *Sullivan* v. *Liberty Mut. Ins. Co.*, *supra* at 55. In large part, this is so because the record does not contain the information necessary to permit a reasonable inference of pretext to be drawn in this case.

The plaintiff is correct that Litwack was not terminated as a part of the reduction in force. However, in order for a reasonable inference of pretext to be drawn, the plaintiff needed to provide evidence of more than the fact that he was a man; she needed to show that he was similarly situated. As set out above, the plaintiff failed to do so. Moreover, Westwood presented evidence of Litwack's greater experience, both at Westwood and at previous employers.

Similarly, the record contains no evidence that the director of the Lowell program was similarly situated to the plaintiff. Westwood's uncontroverted evidence was that the Lowell program was not comparable to that of the Boston Center. Specifically, the Lowell program was a large inpatient facility whereas the Boston Center was a "partial" (i.e., outpatient) program only. Again, absent evidence that the director of the Lowell program was similarly situated, no reasonable inference could be drawn simply from the fact that she was neither pregnant nor terminated.

Finally, the plaintiff argues that pretext can be inferred from the fact that she was not offered the directorship of the partial program at Pembroke Hospital. She points to the fact that of the six employees laid off as part of the July, 2002, reduction-in-force, four (nonpregnant women) were offered comparable positions within Westwood whereas she was not.[11] As the motion judge found, however, the plaintiff presented no evidence of an

---

[10]The other employee not offered a replacement position was a man. See note 9, *supra*.

[11]Contrary to Westwood's suggestion, the fact that the other employee who was not offered a position was a man does not require an inference of nondiscriminatory animus in Westwood's favor.

available suitable opening at Westwood. Westwood presented evidence — that was uncontradicted — that the Pembroke Hospital was a separate entity with different management from Westwood.[12] No reasonable inference of discriminatory animus could be drawn from Westwood's failure to offer a position that was not its to give.

For these reasons, summary judgment was properly granted on the plaintiff's claim under G. L. c. 151B.

3. *Intentional interference with advantageous business relations.* The plaintiff, an at-will employee, brought this claim against Spiegel, alleging that she had a reasonable expectation of continued employment at Westwood with which he improperly interfered by selecting her to be laid off because she was pregnant. Because her interference claim depends entirely on her discrimination claim, it fails for the reasons set forth in the preceding section. Absent a legally sufficient claim for discrimination, the plaintiff, as a matter of law, cannot satisfy the element of "improper motive or means" required to make out her interference claim, and summary judgment was properly allowed. See *Alba* v. *Sampson*, 44 Mass. App. Ct. 311, 314 (1998) (elements of interference claim).

For the reasons set out above, summary judgment was properly entered on all claims.

*Judgments affirmed.*

---

[12]Pembroke Hospital is not included in Westwood's organizational chart.