SUPERIOR COURT 
 
 SARAH KAGACHA and KENNETH TINGLE v. MASSACHUSETTS DEPARTMENT OF DEVELOPMENTAL SERVICES and JANE RYDER, in her official capacity as Commissioner of the Department of Developmental Services

 
 Docket:
 2284CV00287-C
 
 
 Dates:
 May 10, 2022
 
 
 Present:
 Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS’ PARTIAL MOTION TO DISMISS
 
 

             Presented for decision is the Defendants’ Partial Motion to Dismiss Plaintiffs’ Verified Complaint for Injunctive Relief. Upon review, and following a hearing held on May 3, 2022, the Court has determined that the motion shall be ALLOWED IN PART and DENIED IN PART, as follows.
            Regarding the Complaint’s claims against Defendant DDS under the Massachusetts Healthcare Whistleblower Act, G.L. c. 149, § 187 (the “Act” or the “Statute”), the Court agrees that the claims must be dismissed to the extent they rest upon allegations that DDS retaliated against the Plaintiffs for making internal reports of sex and race-based discrimination and harassment in their workplace. Such allegations are not probative of any conduct defined as unlawful under the Act. Rather, the Statute is unmistakably directed to the protection of a health care provider who objects to an “activity, policy or practice of the health care facility” that the health care provider “reasonably believes” is both (i) a “violation of law or rule or regulation
 
                                                            -1-
 
 promulgated pursuant to law or [a] violation of professional standards of practice,” and (ii) “poses a risk to public health.” G.L. c. 149, § 187(b)(3). See Romero v. UHS of Westwood Pembroke, Inc., 72 Mass. App. Ct. 539, 540-41 (2008). Although complaints about discrimination and harassment within a health care facility might notionally constitute objections to behaviors that are contrary to good patient care and, therefore, public health, it stretches the statute too far to cover grievances that themselves have nothing to do with matters of medicine and caregiving. The Act has an entirely different focus. See Commodore v. Genesis Health Ventures, Inc., 63 Mass. App. Ct. 57, 66 (2005) (statute “is designed to safeguard patient care by protecting the rights of health care providers who expose deficiencies in care that violate laws or regulations or professional standards that endanger public health”).
            In the present case, the Plaintiffs complained, at least in part, about acts of employment discrimination and harassment at the Hogan Regional Center. But these particular allegations, although charging the Center with illegality, did not directly concern perceived deficiencies in patient care that threatened public health. While the mistreatment of employees based on race or sex might potentially affect the quality of patient care, it proves too much to qualify such misconduct as the predicate for healthcare whistleblowing under the Act. To interpret the law so broadly would expand its reach to literally every grievance that arises in a health care setting, thereby covering under the umbrella of whistleblowing routine personnel matters that lie far beyond the purview of the Legislature’s declared concern in the Statute. The Court declines to do so. See Commodore, supra.
            That the Act is not implicated by internal complaints of employment discrimination, and should not be so interpreted, is strongly reinforced by the fact that Massachusetts law already provides a comprehensive remedial scheme to combat retaliation against those who oppose such
 
                                                            -2-
 
workplace misconduct. See Massachusetts Fair Employment Practices Act, G.L. c. 151B, § § 4(4), 4(4A). It is well settled that, where Chapter 151B provides an available remedy, “an aggrieved employee may not bring a claim under another statute in the first instance.” Thurdin v. SEI Boston, LLC, 452 Mass. 436, 442 (2008); Green v. Wyman-Gordon Co., 422 Mass. 551, 555 (1996) (Chapter 151B’s “broad exclusivity provision” means that, “where c. 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation” of a different statute). This is precisely what the Plaintiffs seek to do in the case at bar – viz., convert conventional allegations of retaliation for complaining about discrimination and harassment at work (matters covered explicitly by the conciliation and remediation provisions of Chapter 151B) into a claim of healthcare whistleblowing. Having evidently failed to file a timely administrative charge with the Mass. Commission Against Discrimination, as required by G.L. c. 151B, § 5, Massachusetts law clearly prohibits a statutory circumvention through such alternative pleading. See supra.
            In opposing the Defendants’ Motion to Dismiss, the Plaintiffs insist that DDS was mix-motivated by a combination of unlawful intentions – to wit, retaliation against them for having complained about race and sex discrimination, and retaliation against them for having complained about unsafe patient care practices. This may well be true, and for Rule 12 purposes the Court presumes that it is. But it has no bearing whatsoever on the Plaintiffs’ ultimate burden of proof under the Act pursuant to which they have brought their claims. The Healthcare Whistleblower Act makes it unlawful for a healthcare facility to retaliate against someone who engages in quite explicit forms of protected conduct, and requires such a retaliation claimant to demonstrate that protected conduct so defined was a “substantial or motivating part” of the employer’s adverse action against him. See Romero, 72 Mass. App. Ct. at 541 n.4. To the extent
 
                                                            -3-
 
 the health care facility-employer was motivated to retaliate against plaintiffs for reasons other than conduct protected by the terms of the Statute, such reasons – however unsavory they might be – are simply not probative of their claim.[1]
            To the extent the Plaintiffs’ claims in Counts I and II of the Complaint charge DDS with retaliation against them for registering patient care-related complaints, the claims are viable under the Act as a matter of law. The Defendants’ Partial Motion to Dismiss, therefore, shall be DENIED to such extent. To the extent the Plaintiffs’ claims in Counts I and II charge DDS with retaliation against them for advancing grievances related to sex or race-based discrimination or harassment at the Hogan Regional Center, the Defendants’ Partial Motion to Dismiss shall be ALLOWED.[2]
            Regarding the Complaint’s claims against Jane Ryder in her official capacity, the Court agrees with Defendants that Ryder is not properly subject to suit under the Act. The Act only authorizes whistleblowing healthcare providers to bring civil actions for retaliation against a “healthcare facility.” G.L. c. 149, § 187(b). Individuals will only qualify as such if they “employ[] health care providers,” G.L. c. 149, 187(a); and Defendant Ryder, a DDS executive, was undeniably not the Plaintiffs’ employer in this case. Plaintiffs’ argument that the injunctive
 
                                                            -4-
 
relief they seek, if granted, would be “directed toward responsible officials rather than generally against the Commonwealth,” Lane v. Commonwealth, 401 Mass. 549, 553 (1988), though true, has no effect on this claim-defeating fact. There being no other provision of the Statute that contemplates personal liability for individual managers of a healthcare facility, see United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174, 183 (D. Mass. 2019) (dismissing Section 187 claims brought against individual defendants who were not plaintiff’s employer),[3] the Defendants’ Partial Motion to Dismiss the Complaint as to Ryder shall be ALLOWED.
CONCLUSION AND ORDER
            For the foregoing reasons, the Defendants’ Partial Motion to Dismiss Plaintiffs’ Verified Complaint shall be ALLOWED as to those claims against DDS in Counts I and II resting on allegations of retaliation for having reported sex and race-based discrimination and harassment, and DENIED as to those claims against DDS in Counts I and II resting on allegations of retaliation for having reported concerns related to patient safety. The Defendants’ Partial Motion to Dismiss Plaintiffs’ Verified Complaint shall be ALLOWED as to all claims asserted against Ryder in their entirety.
 
                                                            -5-
 
SO ORDERED. 
 
@/s/Robert B. Gordon Justice of the Superior Court
 
@May 10, 2022
 
-------------------------------------
 
[1] The Court recognizes, as Plaintiffs argue, that human beings do not compartmentalize their motivations into neatly defined categories. Nevertheless, the law in this case renders one type of charged motivation on the part of DDS contrary to the Act and thus a basis for liability, while the other motivation ascribed to this Defendant is immaterial. Merely because an employer may have more than one motivation – one relevant and one not – supplies no reason for inviting a jury to conflate the two as though they were one and the same for liability purposes. In the final analysis, and whatever else in the way of unlawful intent may have motivated DDS to act as it did, the Plaintiffs bear the burden to prove that conduct protected by this Act played a causative role in DDS’ adverse treatment of them. Romero, 72 Mass. App. Ct. at 541 n.4. 
 
[2] At trial, DDS may theoretically open the door to exploring such improper motivations (and their causative effect on Plaintiffs’ treatment at work) by acknowledging them as a non-healthcare related intention underlying its decisions regarding Kagacha and Tingle. In that perhaps unlikely event, the Plaintiffs will be free to walk through the door with related evidence of their own. Failing that, however, the Plaintiffs will not be permitted to introduce evidence of other bad acts that have no probative value to their whistleblower claims and risk unfairly prejudicing DDS in the eyes of the jury. See Mass. G. Evid. § § 401, 403, 404(b)(1).
 
[3] Indeed, the Statute contains a definition of “Managers,” see G.L. c. 149, § 187(a), that pertains to those persons to whom protected disclosures can be made, with no suggestion that such managers may themselves be subject to liability under the Act. The Legislature was thus not unmindful of the role individual managers play at a health care facility, and nevertheless elected not to make them personally liable for violations of the Statute. The Legislature likewise included no “aiding and abetting” provisions in the Act, as it did in Chapter 151B, and no employer proxy provisions for the president and treasurer of a corporation, as it did in the Mass. Payment of Wages Act, once again making clear that it knew how to provide for individual executive liability when that was its intention.
 
xxz